ROBERTSON & WILSON SCALE & SUPPLY CO. *v.* RICHMAN.

1. TRIAL—JURY—POWERS OF—JUDGMENT.

In an action for the purchase price of certain fixtures for a store building, the installation of which defendant refused to allow plaintiff to complete, where the question as to what portion had been accepted and used by defendant was in dispute, the jury had the power, as a prerequisite to reaching a money judgment, to determine in whom the title to said articles rested.

On effect of use of property on approval after expression of dissatisfaction, see note in 14 L. R. A. (N. S.) 1107.

2. SAME—VERDICT—SURPLUSAGE.

Although the jury exceeded their powers in stating separately as a part of the verdict in whom said title rested and also directing the disposition of said property, that part of the verdict will be treated as surplusage, not affecting its validity.

3. SAME—RECORDING VERDICT—DUTY OF CLERK—PRESUMPTIONS.

It will be presumed that the clerk of the court formulated the essentials announced in the answer of the foreman and recorded the verdict in the court journal in proper form, as was his duty, in the absence of anything to the contrary in the record.

4. SAME—INSTRUCTIONS—COMPROMISE VERDICT.

Defendant's contention that the charge of the court as a whole unfairly presented his claims to the jury, that it did not clearly set forth the issues in the case, and that it suggested a compromise verdict, *held*, not sustained by the record.

5. SAME.

Where defendant admitted that the tile cooler was furnished and installed and that he had used it and was using it right up to the time of the trial, it was not error for the court to instruct the jury that defendant testified "that he did accept it, that he did use it, and that he is now estopped from claiming he did not use it."

6. SAME—EVIDENCE—CONCLUSION OF WITNESS.

In view of defendant's testimony that he was using the tile cooler, his assertions that he did not accept it, *held*, to be erroneous conclusions of law rather than testimony in the field of facts.

7. APPEAL AND ERROR—INSTRUCTIONS—MISCARRIAGE OF JUSTICE—STATUTES.

Although the trial judge may have erroneously instructed the jury that defendant was not entitled to any set-off under his plea of recoupment, where the jury apparently failed to follow said instruction, and, after an examination of the entire cause under 3 Comp. Laws 1915, § 13763, it cannot be said that it affirmatively appears that said error resulted in a miscarriage of justice, the judgment will not be reversed.

8. SAME—INSTRUCTIONS—FAILURE OF JURY TO FOLLOW—RIGHT TO
   COMPLAIN.
   Only the party against whose interest the jury appear to
   have prejudicially failed to follow the instructions of the
   court may complain.

Error to Wayne; Mandell (Henry A.), J. Sub-
mitted October 6, 1920. (Docket No. 24.) Decided
December 21, 1920.

Assumpsit by Robertson & Wilson Scale & Supply
Company against Joseph Richman for goods sold and
delivered. Judgment for plaintiff. Defendant brings
error. Affirmed.

*Sol. Blumrosen,* for appellant.

*James Swan (John D. Harger,* of counsel), for ap-
pellee.

STEERE, J. Defendant ran a butcher and grocery
business in the city of Detroit. Plaintiff was in the
butcher supply business and sold him certain fixtures
in that line for a new store he expected to soon open.
Differences arose over the terms of sale and delivery
of the fixtures contracted for and this action was
brought by plaintiff in the circuit court of Wayne
county to recover for the articles claimed to have been
sold to defendant in compliance with their contract
of purchase and sale. Plaintiff declared in assumpsit
on the common counts. Defendant pleaded the gen-
eral issue with notice of recoupment and claimed dam-
ages for plaintiff's failure to furnish certain of the
fixtures contracted for within the specified time. The
case was tried by jury on September 18, 1919, result-
ing in a verdict and judgment in plaintiff's favor for
$475, including interest. Defendant moved the court
to set the verdict aside on numerous grounds, which

was denied and exception duly taken. The case was thereafter removed to this court on 21 assignments of error.

Plaintiff's bill of particulars was composed of five items aggregating $741, as follows:

"One 10 x 8 tile cooler, $500.00. Two 10-foot tile counters, $70.00. One 8-foot tile counter, $28.00. 36 feet of racks, $45.00. 28 feet of glass, $98.00."

Upon the trial plaintiff in harmony with its bill of particulars introduced testimony of the articles furnished and their value as contracted for. Defendant under his plea of the general issue and notice introduced testimony tending to show that plaintiff contracted to deliver the fixtures in question to him at his new store by November 1, 1915, at which time he planned and was expecting to open the same for business, but was delayed in so doing until the ensuing January by plaintiff's failure to furnish the fixtures as agreed, causing him a direct loss of $60 rent for the store and $25 paid for advertising the proposed opening on November 1st, which plaintiff's delinquency prevented. His further pleaded counterclaims, of "set-off and recoupment," were for the three tile counters claimed to have been delivered to him in a worthless condition as to which no amount is stated, $15 cost of removing a certain rail plaintiff agreed to but did not remove; $150 for storing the tile cooler, tile counters and racks which were not accepted and plaintiff refused to take back; and $150 based on the amount it would have cost to procure a tile cooler a foot higher than the one installed, which he claimed was the size he ordered.

Plaintiff made no claim for the item of $98 for glass, set out in the bill of particulars, which its manager Robertson testified was for glass at the front of the counters which he proposed to put in but was never delivered owing to trouble which arose. This left

plaintiff's claim for the four other items, as submitted to the jury, $643, with interest at 5% from the time they were furnished in December, 1915. Defendant made no payments on any of these fixtures and claimed he had never accepted them, but admitted that he was using the tile cooler plaintiff installed in his store, in 1915, right up to the time of the trial in September, 1919.

Under defendant's assignments of error three points are presented and argued, interrogatively stated as follows: .

"1. Did the court err in charging the jury that it must disregard the defendant's plea of recoupment?
"2. Did the charge of the court, as a whole, unfairly present the claims of the defendant to the jury?
"3. Was the verdict of the jury legal and proper?"

Three of the four remaining items in plaintiff's bill of particulars are respectively for "two 10-foot tile counters—$70.00, one 8-foot tile counter—$28.00" and "36 feet of racks—$45.00."

The three counters were delivered at defendant's new store and placed in position by plaintiff, and the racks were delivered there but not installed. Whether they were ever accepted by defendant was a matter in dispute, especially as to the counters, but it was undisputed that these articles were never used by defendant. Plaintiff was notified of their rejection but did not remove them and when defendant moved into the new store about January 1st, he took them out and stored them in a small shed or garage at the rear of his store, substituting for them the counters from his old store across the street. Of this he said:

"The reason why I moved them over is I could not wait for Mr. Robertson any longer."

A witness named McFarlane, who assisted in the moving, said of them in part:

"The counters showed that there had been an attempt made to fix them up. I helped to remove the old fixtures out of the old store and moved the old counters into the new store. * * * The old counters fit the purpose better than the new ones. You could not use the new ones in the condition that they were in, in the new store. He would not have them, so they had to take and put the old ones into the new store and use them."

The court left the question of acceptance and liability of defendant for the price of the same to the jury, and in case the jury found he had not accepted them, instructed them:

"The defendant may recover in case you find that the plaintiff owns these goods, may recover in this action the cost of proper storage and care for those goods from the time of delivery down to the present time. I do that for the reason that I want to leave this case in such shape after it closes that it will be known between the parties who owns those goods, that is, the counters and the racks."

The verdict of the jury as announced by the foreman in answer to the customary inquiry by the clerk was:

"We find a verdict of $475 in favor of the plaintiff, including interest, and the return of the three counters, with the meat racks, to Mr. Robertson."

Under defendant's third contention that the verdict "was improper and illegal" it is said in counsel's brief:

"The jury possessed no power to deliberate upon the question and to set forth in whom the title to the counters rested. They had power alone in this case to render a money judgment."

The jury did have power to deliberate and determine, as between the parties, in whom the title to these articles rested, as a prerequisite to reaching a proper money judgment. They were properly so in-

structed by the court. It was not, however, the duty of the jury to separately state as a part of the verdict their determination upon that point, nor within the power of the jury to pursue the subject further in this form of action and direct the disposition of the property. That portion of the verdict was in its nature surplusage, not essential to it, and did not affect its validity. It was the duty of the clerk to formulate the essentials announced in the answer of the foreman, and record the verdict in the court journal in proper form. The record does not contain copies of the journal entries, but this was presumptively done, for the jury did render a distinct money verdict of "$475 in favor of the plaintiff, including interest," and the record says of it: "November 4, 1919, judgment entered on verdict."

Numerous assignments of error are directed against the charge of the court under defendant's second contention that "the court, as a whole, unfairly presented the claims of defendant to the jury," most of which were not argued specifically, the general complaint being as set out in defendant's 9th assignment of error, that the charge "did not clearly set forth the issues in the suit, and the entire tenor and effect in this charge was to prejudice the claims of the defendant," and as stated in the brief of counsel relative to certain remarks of the court, that they "react against the defendant because we insist they put the jury in mind for a compromise verdict, which would satisfy both parties to some extent. This was the result here." As illustrative it is pointed out that the court remarked of the case in the early part of the charge:

"I have been endeavoring to think of some theory under which this case should be submitted to you, so that all of the disputes and issues between these parties would be once and for all settled and determined. I am frank to say to you under the way this case has been presented, I could not find any method

that will guarantee that this litigation will settle all the troubles between the parties. It is possible that this litigation will be followed by another litigation, but I am going to do the best I can with the material that is here."

The case had been once tried. The testimony of the parties was in extreme conflict in many particulars, beginning with the time and nature of the contract between them, and all the way through, resulting in adverse conflicting theories based on conflicting testimony. Though perhaps not helpful and as well omitted, the remarks quoted were not without provocation and appear impartial. If to be regarded as a prejudicial criticism, as counsel claims, they were in the language used as applicable to plaintiff's side as to defendant's. Following this the court proceeded to take up in detail the various conflicting claims and contentions of the parties, explaining their nature, the theories contended for, issues submitted to the jury and their duties in that connection, in a charge covering over 10 pages of the printed record, which on the whole fairly advised the jury of the nature of the litigation and questions for their determination. Nothing was said by the court directly urging or mentioning a "compromise verdict." So far as it indicated to the jury their duty to reconcile their views on the conflicting testimony and agree upon a verdict if they conscientiously could, the instruction was appropriate to the case and not improper.

While much bitterly conflicting testimony centered around the tile cooler which plaintiff furnished and installed the court instructed the jury, as a matter of law, that under defendant's own testimony he had accepted the same and was holden to plaintiff for its value as they might find the same to be, saying in part:

"It is in evidence here from his own lips, that he did accept it, that he did use it, and that he is now estopped from claiming he did not use it."

This is urged as "palpable error." The undisputed facts and defendant's own testimony stamped his strenuous assertions that he never accepted the tile cooler as erroneous conclusions of law rather than testimony in the field of facts.

The tile cooler was ordered for defendant from Cleveland. It weighed 8,000 pounds and was shipped packed in sections. On its arrival about the middle of December it was taken at once to defendant's new store, promptly put together and installed, the work being personally supervised by Robertson. Defendant testified:

"Mr. Robertson set it up and we helped him to do it. He worked all day Sunday until late in the evening setting the box up, and I think had three others to help him."

The counters were put in complete, as Robertson testified, except nailing on the tops, which proved to be an inch short because not sufficiently projecting over the ends for proper appearance, and setting the glass which was to be determined by measuring after the counters were installed. Robertson testified he told defendant that he would make new tops, but the latter became "wrathy" about it and unreasonable, and said he "wouldn't have the tops nor the counters," nor let him install the fixtures and finish the job. Defendant testified that he was not satisfied with the counters "because the mouldings were left off the end of one of them and the tops did not fit. That was my reason for objecting to accepting them." As the result of differences which arose at or about that time, touching which their testimony is broadly at variance, they appear to have kept apart thereafter and only communicated with each other in writing. Robertson testified that after defendant would not let him finish the job he had no further conversation with him until he got word from defendant's attorney. Defendant

said, "I never communicated with Mr. Robertson after November and December, but sent them a letter to take the fixtures out." This letter, dated December 23, 1915, was written by his attorney and stated, in brief, that plaintiff had violated its contract to install fixtures by November 1, 1915, that they had not yet been fully installed, that those which had been were not placed according to contract, and owing to continued breach of its contract plaintiff was requested to "take the fixtures out on or before December 24, 1915, or Mr. Richman will be obliged to take them out himself, and store them at your risk and cost." On December 31, 1915, plaintiff wrote defendant offering to complete the job as contracted for and asking for a reply, which is not shown to have been made. When defendant moved across the street from his old store to the new shortly after January 1, 1916, he took out the counters and racks as threatened, but kept the tile cooler as installed in his new store and used it. He said in one part of his testimony that he did not use it "until the 5th of January, 1916." On cross-examination he was asked and answered:

"*Q.* Since the cooler was there you have been using it continuously up to the present time?

"*A.* I started to use it, that ice box, when it began to be warm, around spring. I have used it, I have put in it ice myself and everything. It was around March.

"*Q.* You are using it right up to now?

"*A.* Yes."

We find no error in the instruction of the court upon that subject.

Defendant's contention that the court erroneously charged the jury to disregard the plea of recoupment is directed to a portion of the charge in which the court told the jury defendant was not entitled to "any set-off with regard to renting the store" or its use, because not shown to have been in contemplation of the

parties or that time was of the essence of the contract. While disputed, defendant's testimony tended to show that the agreement called for delivery of the goods November 1st. We are not prepared to say that portion of the charge did not invade the province of the jury, neither are we prepared to say that it affirmatively appears from an examination of the entire cause that it resulted in a miscarriage of justice. While not assuming to pass upon the weight of the testimony or decide any disputed facts, but examining the verdict of the jury in the light of the drift and import of the testimony as applied to the pleadings of the parties and the specific items claimed thereunder, we are impressed that the jury, perhaps inadvertently, did not accept as good law the instruction complained of.

It fairly appears from the nature of the verdict and trend of testimony that the jury sustained defendant's claim that he never accepted and was not liable for the counters and racks. This eliminated from plaintiff's bill of particulars the three items therefor amounting to $143, leaving only the one item of $500 for the tile cooler, the value of which the court directed the jury he was liable for. His counterclaims of $150 for storing the cooler, counters and racks, and $150 for additional cost of a taller cooler were almost entirely contingent on his theory that he had rejected the cooler. He in fact never took out or stored the cooler as he threatened, but kept, used and, as a matter of law, accepted it. He did not show that he bought or tried to buy, or needed another. It was testified practically without dispute that he put the counters in an old shed, or garage, in his back yard, in a place where there was no flooring and the rain beat in on them, that they were broken, in bad condition and worthless. Under such circumstances there was no legal foundation for the great bulk of his $300 claims, and there is reasonable room for inference that the jury rejected those

two items of set-off and recoupment as not established to their satisfaction by a preponderance of evidence. In this aspect of the situation there remained but plaintiff's claim of $500 for the tile cooler and defendant's three counterclaims of $60 for rent, $25 for advertising and $15 for removing rail, amounting to $100, as to which there was distinct itemized proof. Deducting this amount from plaintiff's price for the cooler and adding to the remaining $400 interest upon it at 5% per annum from the middle of December, 1915, to the time of the trial in September, 1919, results in practically the amount of the verdict rendered.

This reference to the amount and possible elements of the verdict is but incidental to "an examination of the entire cause," as authorized in such cases by section 13763, 3 Comp. Laws 1915. Only the party against whose interest the jury appear to have prejudicially failed to follow the instructions of the court can complain. If the jury so failed to follow the charge in the particular complained of it was in defendant's favor, and we are unable to conclude that it affirmatively appears in this case that the error complained of has resulted in a miscarriage of justice.

The judgment is affirmed.

MOORE, C. J., and BROOKE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.