SERVICE CONVEYOR COMPANY, a
Michigan Corporation, Appellant,

v.

SHATTERPROOF GLASS CORPORA-
TION, a Delaware Corporation,
Appellee.

No. 12104.

United States Court of Appeals,
Sixth Circuit.

Feb. 17, 1955.

John S. Slavens and Wayne A. Anderson, Detroit, Mich. (Francis W. McCauley, Detroit, Mich., on the brief), for appellant.

Fred R. Walker, Detroit, Mich., (Peter L. LaDuke, Detroit, Mich., on the brief), for appellee.

Before SIMONS, Chief Judge, and ALLEN and STEWART, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment rendered on a jury verdict in favor of defendant,[1] after trial of an action for the purchase price of a conveyor system manufactured and installed by plaintiff, a Michigan corporation, in the plant of defendant, a Delaware corporation engaged in the city of Detroit in the manufacture of replacement automobile glass. The facts are stipulated and are in substance as follows:

Plaintiff on May 31, 1950, submitted to defendant a proposal to design, manufacture and install conveyor systems suitable for carrying glass of various sizes from one building to another in defendant's plant and thence to a washing machine where the glass was washed. The

---

1. The parties will be designated as in the court below.

terms of payment specified in plaintiff's proposal were as follows:

"*Terms*

25% within thirty (30) days from date of order; 35% when materials are shipped or when materials are ready to ship; 35% upon completion of installation; 15% within thirty (30) days of completion of installation."

After an amendment of the proposal immaterial here, defendant on August 3, 1950, sent a purchase order which stated, among other things:

"This equipment to be in accordance with your proposal No. U–9466 dated May 31, 1950. Revised in letter dated June 29, 1950.

\* \* \* \* \* \*

"All work to be performed in a good and workmanlike manner and equipment is to perform satisfactorily in every way and be suitable for the purpose for which it is intended.

"All installations covered in this P. O. shall be subject to the approval of our Plant Engineer."

This proposal was accepted in writing by plaintiff on August 7, 1950. The conveyor system was designed, fabricated, and installed in defendant's plant, the installation being begun in the early part of January, 1951. The system was placed in operation about the end of January, 1951.

Four invoices for the aggregate amount of $6,654 were rendered to defendant, mailed January 12, 1951, January 31, 1951, March 29, 1951, and April 27, 1951, respectively, the last invoice in the agreed amount of $168 for overtime. No part of the sums represented in the invoices has been paid except the small amount for overtime.

Defendant claimed that the equipment did not perform satisfactorily, was not suitable for the purpose for which it was intended, and that the conditions set forth in the purchase order therefor had not been complied with. At the trial plaintiff conceded that the plant engineer had not approved the installation. In a letter dated April 11, 1951, defendant stated that the system had failed to function in a satisfactory manner "on several points" and called upon plaintiff to obtain satisfactory performance of the installation at the earliest possible date. Efforts to remedy the claimed defects in performance were made by plaintiff but were not satisfactory to defendant. In a letter dated June 6, 1951, defendant stated that it had suffered a considerable loss of production efficiency due to breakdown of equipment, excessive breakage of glass, and maintenance expense. The main source of the difficulty, defendant declared, was two horizontal turns consisting of two 90° curve sections, the inherent design of which defendant said prevented any practical, effective solution by alteration and required replacement with suitable equipment. In this letter defendant demanded that plaintiff immediately proceed to have the turns replaced with new ones of a design and workmanship to fully meet the requirements of the original agreement. Plaintiff replied that it would make no further effort to make the system operate until defendant had paid plaintiff's invoices in accordance with the contract. Alterations were proposed, but plaintiff refused to make them until defendant paid the invoices. Such payment not being made, plaintiff instituted suit September 5, 1951. Defendant used the conveyor system as installed by plaintiff, without alteration, until December 5, 1951, when it replaced the two curve sections in the conveyor system without plaintiff's knowledge or consent and continued to use the altered conveyor system to the date of trial in September, 1953. During the trial plaintiff conceded that the two curve sections did not operate to defendant's satisfaction. The court submitted the case to the jury on the sole question as to whether or not defendant had accepted the conveyor system. The jury returned a verdict for de-

fendant and judgment of no cause of action was entered thereon.

The sole question presented, raised by motion for directed verdict, is whether defendant's use of the conveyor system in its production from June 6, 1951, until the institution of suit in September, 1951, and its continued use thereafter to the date of trial in September, 1953, together with the replacement of the curve sections on December 5, 1951, without plaintiff's knowledge or consent, as a matter of law constituted acceptance of the conveyor system.

Since the contract was executed and performed in Michigan the rights of the parties are governed by the Uniform Sales Act, which is part of the substantive law of Michigan. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Cox-James Co. v. Haskelite Manufacturing Corp., 255 Mich. 192, 237 N.W. 548. Under the Uniform Sales Act, M.S.A. Section 19.303, where, under a contract to sell, the property in the goods has passed to the buyer and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract, the seller may maintain an action against him for the price of the goods. Section 69(1), M.S.A. § 19.309, Comp.Laws 1948, § 440.69(1), which covers the remedies of a buyer for breach of warranty, reads as follows:

"Where there is a breach of warranty by the seller, the buyer may, at his election:

"(a) Accept or keep the goods and set up against the seller, the breach of warranty by way of recoupment in diminution or extinction of the price.

"(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty.

"(c) Refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for breach of warranty.

"(d) Rescind the contract to sell or the sale, and refuse to receive the goods, or if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid."

Section 48 of the Uniform Sales Act, M.S.A. § 19.288, Comp.Laws 1948, § 440.48, relates to acceptance. It reads as follows:

"The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after a lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

It is conceded that the plant was placed in operation January, 1951. While the conveyor system did not operate to defendant's satisfaction, defendant did not refuse to accept the goods nor rescind the contract nor the sale. It received the goods and did not return or offer to return them to the seller. If it accepted the goods the existence of a breach of warranty under Michigan law does not bar the action for the purchase price. Defendant's remedy was recoupment for damages. Crescent Milling Co. v. H. N. Strait Mfg. Co., 8 Cir., 227 F. 804; Avery v. Burrall, 118 Mich. 672, 77 N.W. 272. By continuing to use the conveyor system defendant waived its right to reject the system unless it was approved by its plant engineer. Matchless Electric Co. v. Morley Bros., 252 Mich. 144, 233 N.W. 202. Its continued use of the system up to the date of trial, September 3, 1953, constituted an acceptance thereof as a matter of law. O. C. Barber Mining & Fertilizing Co. v. Brown Hoisting Machinery Co., 6 Cir., 258 F. 1; Robertson & Wilson Scale & Supply Co. v. Richman, 212 Mich. 334, 180 N.W. 470; Schwartz Showell Corp. v. Bonfiglio, 261 Mich.

407, 246 N.W. 162; Wanner v. Snider, 289 Mich. 464, 286 N.W. 685.

In United States v. Lux Laundry Co., 118 F.2d 848, 849, the Seventh Circuit Court of Appeals stated in an action against a purchaser of coal stokers who used the stokers for fifteen months before requesting that they be removed, that

"The daily use of the stokers for a period of at least one year following installation without any request for removal constituted in law an acceptance."

Moreover, defendant also replaced the defective curve sections without the knowledge or consent of plaintiff. This action it took on December 5, 1951, some eleven months after the conveyor was installed. This was an act inconsistent with the ownership of the seller and as a matter of law constituted acceptance. Cf. Scriven v. Hecht, 2 Cir., 287 F. 853.

Defendant contends that these sections of the Uniform Sales Act do not apply because labor and materials were sold instead of goods. This point is decided adversely to defendant in Cox-James Co. v. Haskelite Mfg. Corp., supra, which involved the purchase price of a waste conveyor system. The court held that the case presented not merely the sale of a certain tank, motor or other specified articles. " 'The thing sold,' " the court said, " 'was a conveyor system supposed to perform a certain function.' " [255 Mich. 192, 237 N.W. 549.] The court held that there was an implied warranty that the system would be reasonably fit for the purpose and said, " 'This case, therefore, comes clearly within the provisions of subdivision 1 of section 15 of the uniform sales act.' " See also Burge Ice Machine Co. v. Weiss, 6 Cir., 219 F.2d 573, which contains a full discussion of the legal questions involved herein.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.