## ASSOCIATION RESEARCH AND DEVELOPMENT CORPORATION v CNA FINANCIAL CORPORATION

Docket No. 52971. Submitted June 3, 1982, at Detroit.—Decided February 9, 1983. Leave to appeal applied for.

Association Research and Development Corporation (ARDCO) was formed to service the insurance program account of Florists Transworld Delivery Association (FTD). FTD, through ARDCO, contracted with Peck Agency, Inc., for insurance offered by CNA Financial Corporation, Continental Casualty Company and Continental Assurance Company (collectively referred to as CNA). Eventually, relationships among the parties deteriorated and ARDCO brought an action in Wayne Circuit Court against CNA and Peck Agency, alleging breach of contract, implied contract, intentional interference with an advantageous business relationship, and business slander. At trial it was learned that Mr. Peck of Peck Agency had left that agency and formed another, Peck Associates, Inc., which plaintiff was allowed to add as a defendant. Plaintiff also dropped the allegation of business slander. Joseph B. Sullivan, J., directed verdicts in favor of the Peck defendants on the intentional interference allegation and in favor of CNA on the allegations of breach of contract and implied contract and dismissed all counts against Peck Agency. Plaintiff withdrew the implied contract claim against Peck Associates. On the remaining counts the jury returned a verdict in favor of plaintiff for breach of contract against Peck Associates and for intentional interference with an advantageous business relationship against CNA, plus attor-

REFERENCES FOR POINTS IN HEADNOTES
[1] 20 Am Jur 2d, Costs §§ 72, 80.
[2] 76 Am Jur 2d, Trial § 1218.
[3] 76 Am Jur 2d, Trial § 1154.
[4] 5 Am Jur 2d, Appeal and Error § 886.
[5] 45 Am Jur 2d, Interference §§ 1, 7, 11, 50.
  Liability for tortious interference with at will business relationship. 5 ALR4th 9.
[6] 22 Am Jur 2d, Damages § 237.
[7] 22 Am Jur 2d, Damages §§ 237, 249.
[8] 3 Am Jur 2d, Agency § 75.

ney fees and costs. The trial court entered a judgment on the verdict except for the award of attorney fees and costs. Plaintiff appeals, alleging that the trial court erred in deleting the jury's award of attorney fees and costs from the final judgment, in granting a directed verdict on the issue of the Peck defendants' tortious interference with plaintiff's business relationship with FTD, in refusing to give plaintiff's offered jury instruction on punitive damages relative to CNA, and in dismissing Peck Agency, Inc., as a party defendant. *Held:*

1. The jury's award of attorney fees and costs was improper in the absence of statutory authority in the circumstances of this case. However, because it cannot be said that the award was mere surplusage and because the intent of the jury is not ascertainable, the proper response of the trial court was not to delete the award in the final judgment but, rather, either to reinstruct the jury or grant a new trial. The only appellate remedy is to reverse and order a new trial.

2. The evidence was sufficient to support a jury in finding that Peck Agency intentionally interfered with plaintiff's business relationship with FTD. Therefore, the trial court erred in directing a verdict in favor of Peck Agency on this issue. The evidence would not have supported such a finding as to Peck Associates, however. Therefore the directed verdict on this issue as to Peck Associates was proper.

3. The court properly refused to give the plaintiffs proffered jury instruction on punitive damages. Such damages may not be awarded.

4. There is insufficient evidence to determine whether the liability to plaintiff of Peck Agency was transferred to Peck Associates before the time of the alleged breach of contract. Only upon an affirmative finding may Peck Agency be properly dismissed on the breach of contract claim.

Reversed and remanded for a new trial.

BRONSON, P.J., concurred in the result only.

### OPINION OF THE COURT

1. COSTS — ATTORNEY FEES.

Generally, an award of attorney fees is prohibited unless specifically authorized by statute; in the absence of statutory authority they may be awarded only in unusual circumstances, such as where the opposing party has committed unlawful acts.

2. JURY — DEFECTIVE VERDICT — SURPLUSAGE — INTENT OF JURY.

A court may remedy a jury verdict which is defective because it contains surplusage by deleting the surplusage from the final

judgment; similarly, even where the defect is not the result of surplusage the court may alter the jury verdict so long as the court can ascertain the intent of the jury and the final judgment implements that intent.

3. JURY — INCONSISTENT VERDICT — REMEDY NOT AUTHORIZED BY LAW.

A trial court must either reinstruct a jury or order a new trial where the jury verdict is inconsistent or contains a remedy not authorized by law.

4. APPEAL — DIRECTED VERDICT.

The Court of Appeals, when reviewing a grant of a defendant's motion for a directed verdict, must consider whether the plaintiff's proofs, viewed in a light most favorable to the plaintiff, are sufficient on each element of the claim to justify submitting it to the jury.

5. TORTS — INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP.

The elements of the tort of interference with an advantageous business relationship are (1) a valid business relationship (2) known to the defendant who (3) engaged in intentional conduct (4) causing the termination of that relationship resulting in (5) damages.

6. DAMAGES — PUNITIVE DAMAGES.

Damages may not be awarded to punish a defendant.

7. DAMAGES — EXEMPLARY DAMAGES — PUNITIVE DAMAGES.

Exemplary damages may be awarded to compensate a plaintiff for humiliation, outrage, and indignity, resulting from the defendant's wilful, malicious, or wanton conduct; punitive damages, which may not be awarded, are designed to punish the defendant for misconduct.

8. AGENCY — APPARENT AUTHORITY OF AGENT — RELIANCE.

A plaintiff is entitled to rely on the apparent authority of one representing himself as an officer or agent of a defendant unless the plaintiff is notified of some limitation on that authority.

*Alexander Ritchie* and *Nederlander, Dodge & McCauley, P.C.* (by *Patrick B. McCauley* and *Gary L. Visscher),* for plaintiff.

*Denenberg, Tuffley, Thorpe, Bocan & Patrick* (by *James A. Thorpe),* for defendants CNA Financial Corporation, Continental Casualty Company and Continental Assurance Company.

*Dykhouse & Wise* (by *Robert A. Marsac),* for defendant Peck Agency, Inc.

Before: Bronson, P.J., and R. M. Maher and M. Warshawsky,* JJ.

Per Curiam. Plaintiff Association Research and Development Corporation (ARDCO) appeals a judgment in its favor against CNA Financial Corporation, Continental Casualty Company and Continental Assurance Company (CNA), Peck Agency, Inc., and Peck Associates, Inc.

This lawsuit grows out of a business relationship between plaintiff and defendants beginning in the fall of 1971. In September, 1971, Florists Transworld Delivery Association (FTD) contacted Mr. Glenn Friedt for assistance in locating a new carrier for FTD's insurance program. Subsequently, Mr. Friedt brought Mr. Robert Reed into the project and together they formed ARDCO to service the FTD account. Mr. Reed then sought the help of Mr. Francis Peck, a principal of Peck Agency, Inc., a Detroit insurance agency. In early 1972, FTD, on the recommendation of plaintiff and Peck Agency, agreed to take on CNA as its carrier. Thereafter, the four companies maintained an ongoing business relationship for the purpose of administering the FTD account.

Over the next three years, relations soured between plaintiff, Peck Agency and CNA and in April, 1975, plaintiff brought this lawsuit. Plaintiff alleged four counts against Peck Agency and CNA:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

(I) breach of contract; (II) assumpsit, or implied contract; (III) intentional interference with an advantageous business relationship; and (IV) business slander. During the trial, plaintiff discovered that in 1973 Mr. Peck left Peck Agency and began operating a new agency, Peck Associates, Inc. Upon plaintiff's motion, the trial court permitted amending the complaint to include Peck Associates as a defendant in all claims against Peck Agency. At this time, plaintiff also droppped Count IV.

At the close of plaintiff's proofs, the trial court granted several of the defendants' motions for directed verdicts. It granted a motion for directed verdict for the Peck defendants on Count III and for CNA on Counts I and II. The court also dismissed all counts against Peck Agency, ruling that the proper defendant was Peck Associates. Plaintiff then withdrew Count II against Peck Associates. Consequently, the only issues to go to the jury were Count I, breach of contract, against Peck Associates and Count III, intentional interference with an advantageous business relationship, against CNA.

The jury returned a verdict for plaintiff. It awarded $80,000 on Count I plus one-half court costs, attorney fees and costs and $2.00 on Count III plus one-half court costs, attorney fees and costs. Upon plaintiff's motion to enter judgment on the jury verdict or grant a new trial, the trial court ruled that the verdict should stand except for the award of attorney fees and costs. The judgment was entered accordingly.

Plaintiff raises four claims of error which we consider in order.

I

Plaintiff argues, first, that the trial court erred

in deleting from the final judgment the jury's award of attorney fees and costs. The award of attorney fees and costs was indeed beyond the power of the jury. In general, an award of attorney fees is prohibited unless specifically authorized by statute. *City of Centerline v 37th Dist Court Judges,* 74 Mich App 97, 103; 253 NW2d 669 (1977), *aff'd* 403 Mich 595; 271 NW2d 526 (1978). The rule fails to apply only in unusual circumstances such as where the opposing party has committed unlawful acts. *Fleischer v Buccilli,* 13 Mich App 135; 163 NW2d 637 (1968). No special circumstances existed in this case; therefore, the jury award of attorney fees and costs was improper.

The more important question, however, is the appropriate judicial response to this improper verdict. The court has several options: (1) delete the award of attorney fees and costs from the judgment; (2) instruct the jury that the award is not permitted by law and return them for further deliberations; or (3) order a new trial. We conclude that only the latter two options were available to the trial court in this case and that it erred in deleting the award from the final judgment.

The proper remedy for a defective verdict depends on the kind of defect present. Where a verdict is defective because it contains mere surplusage the court may remedy the problem by deleting the surplusage from the final judgment. *Robertson & Wilson Scale & Supply Co v Richman,* 212 Mich 334; 180 NW 470 (1920), *Rawson v McElvaine,* 49 Mich 194; 13 NW 513 (1882). Even if the defect is not due to the presence of surplusage, the court may still alter the verdict itself so long as the court can ascertain the intent of the

jury and the court's final judgment implements that intent. *Naccarato v Grob,* 384 Mich 248; 180 NW2d 788 (1970); *Rabior v Kelley,* 194 Mich 107, 116-117; 160 NW 392 (1916). In other situations, however, such as where the verdict is inconsistent, *Harrington v Velat,* 395 Mich 359; 235 NW2d 357 (1975), *Farm Bureau Mutual Ins Co v Sears, Roebuck & Co,* 99 Mich App 763; 298 NW2d 634 (1980), or contains a remedy not authorized by law, *McCormick v Hawkins,* 169 Mich 641; 135 NW 1066 (1912), *Rathbone v Detroit United Railway,* 187 Mich 586; 154 NW 143 (1915), the trial court must either reinstruct the jury or order a new trial.

The trial court apparently believed that the award of attorney fees was surplusage and could be disregarded in entering the judgment. If the jury intended the award to compensate plaintiff only for its legal costs, the award would indeed be surplusage. However, the jury may have intended that the award ensure that plaintiff would have received the full amount of its compensatory damages, undiminished by legal costs. It is reasonable to suppose that, if the jury had been informed that it could not award attorney fees, it would have increased plaintiff's compensatory damages. For this reason, we do not believe the award of attorney fees and costs was surplusage. Nor do we find that the jury's intent was ascertainable. It is equally reasonable to assume that the jury, correctly informed, would have stuck to its original damage award in the conviction that that was all plaintiff deserved. The trial court, therefore, did not have the authority to delete the attorney fees and costs in the final judgment as either surplusage or consistent with the jury's ascertainable intent. The correct response was either to reinstruct the jury or order a new trial. The only

available appellate remedy is to reverse the judgment and order a new trial. We adopt this remedy.

Because the other issues raised by appellant may arise at the new trial we shall address each issue in turn.

## II

Plaintiff argues that the trial court erred in granting a directed verdict on the issue of the Peck defendants' tortious interference with plaintiff's business relationship with FTD. On appeal from the grant of a defendant's motion for a directed verdict, the question is whether plaintiff's proofs, viewed in a light most favorable to plaintiff, are sufficient on each element of the claim to justify submitting it to the jury. *Patelczyk v Olson,* 95 Mich App 281; 289 NW2d 910 (1980). The elements of the tort of interference with an advantageous business relationship are (1) a valid business relationship (2) known to the defendant who (3) engaged in intentional conduct (4) causing the termination of that relationship resulting in (5) damages. *Northern Plumbing & Heating, Inc v Henderson Brothers, Inc,* 83 Mich App 84, 93; 268 NW2d 296 (1978), *lv den* 405 Mich 845 (1979). In the instant case, the question is whether plaintiff produced evidence that the Peck defendants intentionally interfered with plaintiff's relationship with FTD sufficient to withstand a directed verdict.

Plaintiff points primarily to two pieces of evidence. First, on April 24, 1972, Mr. Peck wrote a letter to FTD stating that "regarding promotional material, CNA cannot, of course, go ahead with this until FTD executes a joint 3-year 'agent of record letter' directly to the Peck Agency, Inc.,

and ARDCO, as has been thoroughly discussed by all concerned and agreed upon prior to closing". Other testimony indicated, however, that neither ARDCO nor FTD had agreed to the joint agent of record letter and that as of the spring of 1972 no request for an agent of record letter had been made on behalf of Peck Agency.

Second, in June, 1972, FTD requested that ARDCO assume certain administrative duties then performed by FTD. ARDCO agreed and Continental found the arrangement satisfactory. Mr. Peck, however, objected strenuously to the transfer. As a result, FTD, Peck Agency, and ARDCO negotiated an alternative method of handling the duties, embarrassing ARDCO.

Viewed in a light most favorable to plaintiff, this evidence would have justified a jury's finding that Peck Agency had intentionally interfered with plaintiff's business relationship with FTD. The trial court erred in granting defendant Peck Agency's motion for a directed verdict.[1] These events, however, occurred well before Peck Associates was created in 1973. The evidence as to these occurrences, therefore, would not have justified a jury's finding that Peck Associates intentionally interfered with plaintiff's business relationship with FTD. The trial court did not err in granting a directed verdict for Peck Associates on Count III.

### III

Plaintiff next claims as error the trial court's refusal to give plaintiff's instructions on punitive damages on the intentional interference with a

---

[1] By this holding we do not decide that the trial court erred in dismissing Peck Agency as a defendant on Count III. That issue was not raised on appeal and we decline to decide it.

business relationship count against CNA. We cannot agree.

In Michigan, damages may not be awarded to punish the defendant. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 419; 295 NW2d 50 (1980); *Birkenshaw v Detroit,* 110 Mich App 500, 511; 313 NW2d 334 (1981); *Peisner v The Detroit Free Press, Inc,* 104 Mich App 59, 71; 304 NW2d 814 (1981); *Riggs v Fremont Mutual Ins Co,* 85 Mich App 203, 206; 270 NW2d 654 (1978); *Ray v Detroit,* 67 Mich App 702, 704; 242 NW2d 494 (1976). Plaintiff relies, however, on *Dassance v Nienhuis,* 57 Mich App 422; 225 NW2d 789 (1975), which held that punitive damages may be awarded for intentional interference with an advantageous business relationship. Nevertheless, we find that *Dassance* was decided incorrectly. The *Dassance* Court based its finding that punitive damages are warranted where "vindictive, willful, wanton or malicious conduct is present", *Dassance, supra,* 434, specifically on *Alexander v Detroit,* 392 Mich 30, 43; 219 NW2d 41 (1974). In *Alexander,* though, the Supreme Court held that "[i]n the absence of one of these forms of intentional conduct, no *exemplary* damages are in order". 392 Mich 43. (Emphasis supplied.) The cases are legion that punitive and exemplary damages are distinct. See *Kewin v Massachusetts Mutual, supra; Birkenshaw v Detroit, supra; Peisner v Detroit Free Press, supra* (Brennan, J., *concurring); Ray v Detroit, supra.* Exemplary damages are to compensate the plaintiff for its humiliation, outrage, and indignity resulting from defendant's wilful, malicious or wanton conduct, *Kewin v Massachusetts Mutual, supra,* 419. Punitive damages, however, are designed to punish defendant for its misconduct. See *Peisner v Detroit Free Press, supra* (Brennan, J.,

*concurring).* The *Dassance* ruling that Michigan allows punitive damages, therefore, could not properly rely on *Alexander v Detroit, supra.* Indeed, punitive damages have been disfavored in Michigan for generations. See *Stilson v Gibbs,* 53 Mich 280; 18 NW 815 (1884).

Plaintiff's proffered instruction informed the jury that it may award damages "to punish and deter" the defendant. We find applicable today the venerable words of Chief Justice COOLEY:

"[I]n all cases it is to be distinctly borne in mind that compensation to the plaintiff is the purpose in view, and any instruction which is calculated to lead them to suppose that besides compensating the plaintiff they may punish the defendant is erroneous." *Stilson v Gibbs, supra,* 284.

Because plaintiff's requested jury instruction was erroneous, the trial court acted correctly by rejecting it.

### IV

Finally, plaintiff argues that the trial court erred in dismissing Peck Agency, Inc., as a party defendant on the breach of contract count. On August 3, 1973, the following agreement was signed by Mr. Francis Peck of Peck Agency and Mr. Robert Reed of ARDCO:

"It is hereby mutually agreed that commission *[sic]* generated on insurance written through the Florists' Transworld Delivery Association Group Insurance Trust or its successor(s) by either the Peck Agency, Inc. and/or its successor(s) and/or Association Research and Development Corporation and/or its successor(s) shall be shared equally after sales and administration expenses."

Peck Agency was a corporation in which Mr. Peck and his brother each owned a 50% interest. In October, 1973, Mr. Peck established Peck Associates, a corporation in which he maintained a 100% interest. Peck Associates assumed half of Peck Agency's accounts, including the FTD account. It also continued to use Peck Agency stationary and shared office space with Peck Agency. Apparently, plaintiff became aware of Peck Associates' existence only at trial and, upon its motion, the court allowed plaintiff to amend its complaint to include the corporation as a codefendant. Later, the court dismissed Peck Agency on the ground that Peck Associates was the proper defendant. Judgment on the breach of contract count, therefore, was not against Peck Agency.

The question on appeal is whether at the time of the breach Peck Agency was liable on the August 3, 1973, contract. We note first that Mr. Peck had apparent authority to bind Peck Agency to the contract. Mr. Peck accepted the contract "on behalf of Peck Agency, Inc.". Below his signature appears: "Francis D. Peck
        "Chairman of the Board"

Although by August Mr. Peck and his brother were operating separately, Peck Associates was not established until later in the year. Mr. Peck represented himself as an officer of Peck Agency and signed the contract in that capacity. Moreover, plaintiff conducted business with Peck Agency through Mr. Peck exclusively. Thus, Mr. Peck must have appeared as an agent entrusted with general management of Peck Agency. As such, the plaintiff was entitled to rely on such apparent authority unless it was notified of some limitation on that authority. *Bergy Bros, Inc v Zeeland Feeder Pig, Inc,* 96 Mich App 111, 115;

292 NW2d 493 (1980), *lv gtd* 411 Mich 974 (1980). Because plaintiff did not have such notice, Peck Agency was bound by the contract. See, also, *Sweeney v Adam Groth Co,* 269 Mich 436, 439; 257 NW 855 (1934).

This conclusion, however, does not settle the matter. The breach of the contract occurred after Peck Associates had taken the FTD account from Peck Agency. Although the testimony alludes to an agreement between Mr. Peck and his brother to divide the business of Peck Agency, the record does not disclose the details of this agreement. In light of the record's relative silence on the nature of the agreement, we can only speculate as to its legal effect. We decline to do so and, instead, direct the trial court to conduct an evidentiary hearing into the agreement between Frank Peck and his brother to transfer to Peck Associates one-half of Peck Agency's business, including the FTD account. After making findings of fact, the trial court must determine whether the agreement was legally effective to transfer liability on the August 3, 1973, contract to Peck Associates. The court may dismiss Peck Agency as a party defendant on the breach of contract claim only if it decides that the agreement transferred liability to Peck Associates before the breach occurred.

The judgment is reversed and remanded for a new trial in accordance with this opinion. No costs, neither party having prevailed in full.

BRONSON, P.J., concurs in the result only.