BERRY PONTIAC, INC. *v.* BURKE

1. LABOR RELATIONS—PICKET LINE—VIOLENCE—INJUNCTION—JURIS-
DICTION.

   State courts have jurisdiction in labor disputes to issue temporary
   restraining orders and preliminary injunctions against violence
   and physically coercive conduct on picket lines.

2. LABOR RELATIONS—INJUNCTIONS—IMPROVIDENT INJUNCTION—EN-
FORCEMENT.

   An improvidently granted injunction, once issued, must be obeyed
   and can be judicially enforced.

3. LABOR RELATIONS — INJUNCTION — PICKETING — IRREPARABLE IN-
JURY.

   Rule that a judge must justify his exercise of the extraordinary
   power of injunction in labor disputes applies only to those
   cases where picketing is sought to be enjoined or restricted
   summarily.

4. LABOR RELATIONS—INJUNCTION—CRIMINAL ACTS.

   Enjoining of specific acts in a labor dispute which are crimes,
   even without an injunction, is valid where the trial judge made
   it clear that the restraining order was not intended to prevent,
   restrict, or regulate union picketing.

5. CONTEMPT—EVIDENCE—COMPETENCY.

   A reviewing court does not weigh the evidence or the credibility
   of witnesses upon appeal of a conviction for contempt and,
   if there is competent evidence to support the lower court
   findings, its judgment must be affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 31 Am Jur, Labor § 513 *et seq.*
[5, 6] 5 Am Jur 2d, Appeal and Error §§ 865, 869.
[7] 31 Am Jur, Labor §§ 591, 597.

6. CONTEMPT—WITNESSES—CREDIBILITY—QUESTION OF FACT.
   Credibility of witnesses in a contempt hearing is properly left
   to the trial court as the trier of facts.

7. CONTEMPT — LABOR RELATIONS — WITNESSES — CREDIBILITY —
   EVIDENCE — COMPETENCY.
   A finding that defendant union members violated an injunction
   restraining them from interfering with plaintiff automobile
   dealer's property was not clearly erroneous where an eyewit-
   ness testified that defendants threw a firecracker at the car
   of one of plaintiff's customers, thus establishing the act itself
   and the identity of the defendants as the actors, and the trial
   court in the record characterized the eyewitness as "reliable"
   and as "a skilled observer."

Appeal from Wayne, Victor J. Baum, J. Submit-
ted Division 1 June 9, 1969, at Detroit. (Docket
Nos. 5,427, 5,428.) Decided October 29, 1969.

Complaint for injunctive relief by Berry Pontiac,
Inc., a Michigan corporation against Roland L.
Burke, Glenn Chubb, and Dale Rittenhouse, to re-
strain them from interfering with plaintiff's prop-
erty. Plaintiff moved that defendants be found in
contempt. Automotive Salesmen's Association
(AFL-CIO) intervened as a defendant. Defendants
adjudged in contempt. Defendants appeal. Af-
firmed.

*Colombo, Vermeulen & Colombo,* for plaintiff.

*John Mazer,* for defendant Roland L. Burke.

*Alexander, Braun, Plath & Ashley,* for defendants
Glenn Chubb and Dale Rittenhouse and for interven-
ing defendant.

Before: FITZGERALD, P. J., and LEVIN and T. M.
BURNS, JJ.

T. M. Burns, J.   The complaint here was filed by plaintiff, Berry Pontiac, Inc., against Roland L. Burke on Friday morning, February 23, 1968. Burke was also served with an order to show cause why a temporary restraining order should not be issued at the hearing which was to be held that same afternoon.   There is some question as to whether Burke was represented by counsel at that hearing as apparently he was unable to contact his attorney and consequently contacted the attorney for his union, the intervening defendant, Automotive Salesmen's Association, which was not at that time a party to the action.

The attorney for the union stated that he wasn't prepared to represent Burke.   However, the attorney did agree to the issuance of a temporary order which was by its own terms to expire on the following Monday, February 26, 1968 when a hearing on the merits was scheduled.

The temporary restraining order prevented Burke, his agents or any person working in concert with him, from defacing, destroying, damaging or otherwise interfering with Berry Pontiac's property, or from coming within 200 feet of its property.

The Monday hearing was adjourned at the request of Burke's counsel because of possible prejudice to Burke in criminal proceedings arising out of the same facts as alleged in Berry Pontiac's complaint for injunctive relief.[1]

---

[1] *"The Court:* Is there some issue as to whether or not going forward with this proceeding might prejudice him in the criminal matter?

*"Mr. Mazer (Burke's attorney)*: I think everything that you're going to do, your Honor, in connection with this matter certainly is going to prejudice his case on the criminal.

* * *

*"The Court:* As I see it, there is a way of protecting the peace of the community without prejudicing the respondent in a criminal case, and that would be by temporary restraining order which protects the public, which protects the public peace and safety, making

The court at that time extended the temporary restraining order until April 1, 1968 to allow the criminal proceedings to proceed unprejudiced. Since the parties were before the court, this was done orally.[2] The orally-extended injunctive order issued at the Monday hearing differed significantly from the temporary restraining order issued the previous Friday in that it did not prevent Burke from coming within 200 feet of Berry Pontiac's property and expressly provided that he could engage in peaceful

it very clear that it does not constitute any finding or admission against the defendant.

"*Mr. Mazer:* We will agree that he shouldn't—

"*The Court:* Otherwise it seems to me that perhaps he's got to risk some possible prejudice, although it's hard for me to see exactly—

"*Mr. Mazer:* We will agree he shouldn't deface, destroy, damage, or interfere with the personal or real property. I see nothing wrong in that.

"*The Court:* You would agree?

"*Mr. Mazer:* Well, certainly.

"*The Court:* That's all.

"*Mr. Mazer:* But he is still going to work that picket line. We don't want that 500 feet, 200 feet. I have repeatedly told him, 'Mind your peace, be a good boy,' and I have done that in front of the police and—

"*The Court:* Under our law people have a right to picket peacefully.

"*Mr. Mazer:* And I am telling him, and as far as I am concerned, that's the way it is going to be. He is not going to deface. He is not going to break or destroy or damage or otherwise interfere with them. We have a picket line here that we think is extremely important.

"*The Court:* You would consent to a temporary restraining order provided that it's made very clear that it's not intended to enjoin or inhibit this man from peaceful picketing.

"*Mr. Mazer:* Fine."

2 "*The Court:* I am going to adjourn this matter until April 1, 1968. The respondent is temporarily enjoined pending further order from defacing, destroying, damaging or interfering with the petitioner's personal and real property and from threatening any person with violence or intimidating any person in and about the premises of the petitioner at 874 West Ann Arbor Road, Plymouth, Michigan; 936 West Ann Arbor Road, Plymouth, Michigan; 685 West Ann Arbor Road, Plymouth, Michigan.

"Provided, that this order shall not prevent or prohibit the defendant from engaging in peaceful picketing or in other lawful forms of concerted labor activity or collective bargaining."

picketing and in any other form of concerted labor activity or collective bargaining.

On March 1, a motion for contempt was filed, alleging that on February 29, 1968, the respondents, Roland Burke, Glenn Chubb and Dale Rittenhouse, had sought to intimidate a customer of Berry Pontiac by throwing a firecracker at his car, thus violating the injunction. The union was allowed to intervene at this time.

Hearings were held in Wayne county circuit court before Judge Victor Baum who found defendants in contempt and sentenced them under the statute to 30 days in jail and to pay a $250 fine. MCLA § 600.1715 (Stat Ann 1962 Rev § 27A.1715). They appeal that conviction.

The defendants on appeal rely for support of their contentions of error by the trial judge on the cases which were decided by the Supreme Court of this state concerning the epic battle between The Cross Company and Local No. 155 of the United Automobile Workers. *Cross Company* v. *UAW Local No. 155 (AFL-CIO)* (1963), 371 Mich 184; *Cross Company* v. *UAW Local No. 155 (AFL-CIO)* (1966), 377 Mich 202.

We find the so-called *"Cross Cases"* are dispositive, but a careful application of those cases to the facts here makes it clear that no reversible error was committed.

The jurisdiction of the court to issue a temporary restraining order and preliminary injunction is clear. *Cross* (1963), *supra,* at pp 200–203. Therefore, even if we were to decide (as defendants claim we should) that the injunction was improvidently granted, once issued it must be obeyed and can be judicially enforced. *Cross* (1963), *supra,* at pp 195, 203. See also *Town & Country Motors, Inc.* v. *Local Union No. 328* (1959), 355 Mich 26, at p 55.

The defendants allege that the first *Cross* case stands for the proposition that "(in) labor cases, where picketing is sought thus to be enjoined or restricted summarily, nothing less than a clearly persuasive showing of the imminent and irreparable injury beyond the power of the regularly constituted police authorities of the community to control must be insisted upon by the chancellor to justify his exercise of the extraordinary power of injunction *prior to such hearing as due process demands"*, p 197, and that since no showing was made before the injunction was issued it was not only improvident but void and unenforceable. See *Town & Country Motors, Inc.* v. *Local Union No. 328, supra.*

Yet the standard established in *Cross* (1963), *supra,* at p 197, applies by its own terms to those cases where "picketing is sought  *  *  *  to be enjoined or restricted summarily". Such is not the case here, as the trial judge made it clear in the order issued at the Monday hearing that the order was not meant to prevent, restrict or regulate picketing, but was intended only to enjoin the commission of specific acts which, even without the injunction, were crimes.

In addition, the hearing referred to in the first *Cross* case was delayed here by the court's solicitude for Burke's requested delay to prevent possible prejudice of pending criminal actions against him arising out of the same circumstances, as alleged in Berry's complaint.

Given the facts here presented, we find that the injunctive order which was issued at the conclusion of the Monday hearing is not void and is therefore enforceable.

The defendants contend that even if the court had jurisdiction to issue the injunction its finding of a violation of the injunction and therefore the convic-

tion for contempt of court was not supported by competent evidence. We do not agree.

The Supreme Court in *Cross* (1966), *supra,* set down the standard by which we are bound when it said at pp 217, 218:

"Upon appeal of a conviction for contempt this Court does not weigh the evidence or the credibility of witnesses (citation omitted). The findings of the lower court must be affirmed if there is competent evidence to support the findings. (Citation omitted)".

The trial court heard an eyewitness account of the incident from one whom the court characterizes in the record as "a reliable witness", and as a "skilled observer", which establishes not only the act itself, but also, the identity of the defendants as the actors. Although defendants challenge the trial court's characterization of and reliance on the eyewitness, this question of credibility is properly left to the trial court as trier of facts. We do not find that his decision was clearly erroneous.

After careful review of the record on appeal and due consideration to the issues raised, we find that the trial court did not err either in the issuance of the injunction or in the finding of contempt.

Affirmed.

All concurred.