PEOPLE v. TEMPLE

1. CRIMINAL LAW—PLEA OF GUILTY—VOLUNTARINESS.
   A plea of guilty is voluntary if it is knowingly and under-
   standingly made with benefit of counsel, irrespective of the
   existence of an illegally obtained confession.

2. CRIMINAL LAW—PLEA OF GUILTY—VOLUNTARINESS.
   A plea of guilty is "voluntarily" made in the ordinary use of
   language, where the trial judge has examined the accused in
   painstaking detail as to the reason for his plea, explained
   to him in precise terms all of his pre-plea alternatives,
   pointed out fully and fairly the consequences of the plea
   and where the accused was represented by counsel with whom
   he conferred three times before he proffered his plea.

3. CRIMINAL LAW—PLEA OF GUILTY—WAIVER OF DEFECTS.
   All prior non-jurisdictional defects are waived by a plea of
   guilty.

4. CRIMINAL LAW—PLEA OF GUILTY—APPELLATE REVIEW—MISCAR-
   RIAGE OF JUSTICE.
   Appellate courts should be concerned with the substance, not
   the form, in determining whether there has been a miscarriage
   of justice in a prosecution for crime when a defendant's plea
   of guilty is accepted.

Appeal from Oakland, James S. Thorburn, J.
Submitted Division 2 March 3, 1970, at Lansing.
(Docket No. 7,833.)   Decided May 8, 1970.

REFERENCES FOR POINTS IN HEADNOTES

[1]  21 Am Jur 2d, Criminal Law §§ 485–487, 505.
[2]  21 Am Jur 2d, Criminal Law §§ 485–491, 505.
[3, 4]  21 Am Jur 2d, Criminal Law § 495.

James Gary Temple was convicted, on his plea of guilty, of larceny from an automobile. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, *Dennis Donohue,* Chief Appellate Counsel, and *Edward Sosnick,* Assistant Prosecuting Attorney, for the people.

*Frederick G. Buesser, III,* for defendant on appeal.

Before: J. H. GILLIS, P. J., and DANHOF and O'HARA,* JJ.

O'HARA, J. This is an appeal of right from an order of the circuit court denying leave to withdraw a plea of guilty after sentence.

On October 7, 1968, defendant, represented by counsel, entered his plea of guilty of the offense of larceny from an automobile. MCLA § 750.356a (Stat Ann 1954 Rev § 28.588[1]). He was sentenced to three to five years. On January 6, 1969, he filed his motion. It was supported by an information-and-belief-based affidavit of his appointed appellate counsel. The thrust of the motion is that he pleaded guilty only because there was at the time of the acceptance of his plea, in the possession of the police and prosecuting attorney, inculpatory statements which he believed would have incontestably established guilt. He contends these statements were obtained in violation of his constitutional rights. The affidavit supporting his motion in pertinent part recites:

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

"* * * That the defendant's plea of guilty was not properly obtained, made, given or accepted, to wit: (The following allegations being made on information and belief)

"On June 27, 1968, the defendant was incarcerated in the Oakland County jail for a term of six months as a result of proceedings in no way connected with those presently before the court. Between June 27, 1968 and July 10, 1968, while defendant was incarcerated in the Oakland County jail, officers of the Ferndale Police Department, including Captain Gary interrogated the defendant in the jail concerning the subject matter of the present proceedings. * * * Captain Gary further advised the defendant that he would see that the defendant got a light sentence if he made a statement and plead guilty. He further told the defendant that if he did not plead guilty he would be charged with the additional offense of possession of stolen property and that David Stuart would testify against him. Captain Gary indicated to the defendant that he could have a lawyer when formal charges were made.

"On July 10, 1968, a complaint was issued in Ferndale Municipal Court and the defendant was arraigned thereon on that date. Relying on the representations made by the Ferndale Police Department, and without the benefit of counsel, the defendant made a full and complete statement at the time of the arraignment and waived his right to a preliminary examination.

"On July 25, 1968, the defendant was arraigned in Oakland County Circuit Court before the Honorable James S. Thorburn who appointed James G. Hartrick, attorney at law, to represent the defendant and adjourned the arraignment. On September 5, 1968, the arraignment in this cause was finally held before the Honorable James S. Thorburn, attorney Hartrick was again appointed and his appearance filed. On September 5, 1968, the defendant for the first time consulted with an attorney. Prior to that

date, he had without knowledge as to his right to have counsel present during interrogation, made a statement to the Ferndale Police Department and on October 8, 1968, had given incriminating testimony against the aforesaid David Stuart at a preliminary examination again without the advice of an attorney and without knowledge of his right to have said attorney present.

"On October 7, 1968, the defendant entered a plea of guilty to the charge made against him, said plea being a direct result of the fact that incriminating statements and sworn testimony had previously been improperly obtained by the Ferndale Police Department and the Oakland County Prosecutor's office.

"As a consequence of the aforesaid conduct, the plea made on October 7, 1968, was made and accepted in violation of the defendant's right to remain silent, violation of his right to counsel, violation of his right to due processes of law and in violation of his right to a fair trial by an impartial jury.

"Wherefore, defendant prays that his plea of guilty heretofore made on October 7, 1968 be set aside and that a new trial be granted."

We set forth the proceedings attendant the acceptance of the plea *verbatim*:

*"Plea of Guilty—October 7, 1968*
*"Alex McGarry:* In the matter entitled CR 68–3825, the People of the State of Michigan v. James Gary Temple, on a charge of larceny from an automobile. Today being the date set for trial, the people are ready to proceed to trial.

*"Louis Fairbrother:* May it please the court, my name is Louis Fairbrother. I am here on behalf of James Hartrick, who was appointed to represent him. Mr. Hartrick is out of town today.

"I have discussed this matter with Mr. Temple on three different occasions. At this time he wishes to enter a plea on this matter.

"*The Court:* Now, you understand that you are entitled to the services of Mr. James Hartrick, who was appointed as your counsel? Mr. Fairbrother and Mr. Hartrick are associated. Are you satisfied to be represented by Mr. Fairbrother? Do you want him appointed in Mr. Hartrick's place?

"*Respondent:* Yes, sir.

"*The Court:* This is agreeable to you?

"*Respondent:* Yes, sir, it is.

"*The Court:* In that event, the court must inquire of you as to the basis—I understand you have discussed this matter thoroughly with both Mr. Fairbrother and Mr. Hartrick?

"*Respondent:* Yes, sir, I have.

"*The Court:* They have advised you of your constitutional rights?

"*Respondent:* Yes, sir.

"*The Court:* Now, are you aware you have a right to trial by jury?

"*Respondent:* Yes, your Honor.

"*The Court:* Do you know what a trial by jury is?

"*Respondent:* Yes, sir, I do.

"*The Court:* How far did you go in high school?

"*Respondent:* I finished the 10th grade.

"*The Court:* Can you read, write and understand the English language?

"*Respondent:* Yes, sir.

"*The Court:* You are charged with the crime of larceny from a motor vehicle. I take it this is the charge, Mr. McGarry?

"*Mr. McGarry:* That is correct, your Honor.

"*The Court:* Mr. Fairbrother, that is the charge?

"*Mr. Fairbrother:* That is correct, your Honor.

"*The Court:* As a result of this plea of guilty do you realize you could be sentenced to a maximum of five years in prison?

"*Respondent:* Yes, sir, I do.

"*The Court:* Is the plea you are about to make freely, understandingly and voluntarily made?

"*Respondent:* Yes, sir, it is.

"*The Court:* Has anybody used any undue influence, compulsion or duress to force you to plead guilty?

"*Respondent:* No, sir.

"*The Court:* Has anyone promised you anything?

"*Respondent:* No, sir.

"*The Court:* Has anybody told you your sentence would be more lenient if you plead guilty?

"*Respondent:* No, sir.

"*The Court:* You are pleading guilty because you are guilty?

"*Respondent:* Yes, sir.

"*The Court:* The information in the case charges that on or about the 23rd day of June, 1968, that you committed the crime of larceny from a motor vehicle, to-wit, a 1968 Oldsmobile, bearing serial number 344878,281065, owned by Key Oldsmobile, Inc., by then and there feloniously removing, stealing, taking and carrying away from the automobile and possession of said Key Oldsmobile, Inc., an engine, No. QW–8337896, contrary to the statute.

Now, did you do those things?

"*Respondent:* Yes, sir, I did.

"*The Court:* Would you just tell us in your own words how you accomplished this?

"*Respondent:* Well, we removed the car from Key Oldsmobile lot to a garage.

"*The Court:* Who is 'we'? Who was with you?

"*Respondent:* David Stewart.

"*The Court:* David Stewart?

"*Respondent:* Yes.

"*The Court:* And yourself, and who else?

"*Respondent:* That's all.

"*The Court:* Just the two of you?

"*Respondent:* Yes.

"*The Court:* You took the car?

"*Respondent:* Yes.

"*The Court:* Did you break into the lot? How did you get in it?

"*Respondent:* The lot was open, sir.

"*The Court:* Was it at night or the daytime?

"*Respondent:* It was in the daytime.

"*The Court:* How did you drive the car away? Was the key in it?

"*Respondent:* I had a key for it.

"*The Court:* Was it a master key?

"*Respondent:* Well, I was working at the place at the time.

"*The Court:* So you knew this key fitted that car?

"*Respondent:* Yes, sir, I did.

"*The Court:* Where did you drive it to?

"*Respondent:* To a garage in Ferndale.

"*The Court:* Then what did you do there?

"*The Respondent:* Took the parts off of it.

"*The Court:* Did the parts include the engine?

"*Respondent:* Yes, sir.

"*The Court:* You took the engine out?

"*Respondent:* Yes, sir.

"*The Court:* What did you do with the engine?

"*Respondent:* Put it in my car.

"*The Court:* The court is satisfied that your plea is lawfully made, and your plea of guilty is accepted.

"This matter will be referred to the Oakland County Probation Department for investigation and report back to the court. Sentence will be imposed on October 31, 1968, a Thursday, at 9 a.m. Bond will be continued."

The precise point raised by this appeal has not yet been passed upon in our state. It has commanded the attention of several state courts of last resort. It was the subject of an *en banc* hearing in the Second Circuit Court of Appeals. Certiorari was granted and the issue was argued before the United States Supreme Court February 24, 1970. Decision by that court impends.[1]

---

[1] After the foregoing opinion was written, but before it was filed and released, the United States Supreme Court in the case of *McMann* v. *Richardson* (1970), 397 US 759 (90 S Ct 1441, 25 L Ed 2d 763) (opinion released May 4, 1970), reversed the majority holding of the Second Circuit and also followed the dissent.

The question in its broadest term is:

May a guilty plea by an accused, represented by counsel, stand as against an after-made allegation that the plea was directly induced by the existence of an illegally obtained confession in the possession of the police at the time the plea was made?

We forego a case-by-case analysis of the various holdings. We include an addendum to this opinion which furnishes to the bench and bar a collation of the authorities we have examined. We confine ourselves to an examination of the Second Circuit *en banc* opinion because it highlights the dichotomy in legal principle involved in this appeal.

While the Second Circuit case dealt with the right of a state prisoner to an evidentiary hearing on the issue of the voluntariness of the confession, and was raised by *habeas corpus* in the Federal district court, that issue is almost identical in legal substance with that raised by appellant here on his motion to withdraw the plea of guilty after sentence. Therefore, we examine the Second Circuit case. It is cited as *United States, ex rel. Ross,* v. *McMann* (CA2, 1969), 409 F2d 1016. Because of similarity of issues the applications of two other petitioners were considered in the same hearing.

All the petitions were denied in the district court. All were reversed by the Circuit Court of Appeals *en banc.* The intensity of the feeling of the members of the *en banc* panel is attested to by the acrimony in both the majority and dissenting opinions. The majority, relying on its construction of *United States, ex rel. Glenn,* v. *McMann,* (CA2, 1965), 349 F2d 1018, *cert. den.* (1966), 383 US 915 (86 S Ct 906, 15 L Ed 2d 669), held:

"The question of when to hold a hearing has apparently been complicated in this Circuit    *    *    *

by confusion between the doctrine that an involuntary guilty plea may be collaterally attacked and the well-established doctrine that *if* the plea *is* voluntary, it is an absolute waiver of all non-jurisdictional defects in any prior stage of the proceedings against the defendant.

\* \* \*

"In the case at bar, the court, relying on *Glenn,* found it unnecessary to make such determinations. This, we think, resulted from a too expansive reading of *Glenn.* The opinion in *Glenn* may be read either of two ways: (1) the allegation of a coerced confession, *without more,* is not sufficient to raise the issue of the voluntariness of a guilty plea; or (2) an unconstitutionally coerced confession is never relevant to the issue of the voluntariness of a guilty plea. The first, more narrow reading, seems to us to state the proper rule."[2]  *Ross, supra,* pp 1019–1920.

"The judgment is reversed and the case remanded with instructions to hear and determine petitioner's application  \* \* \*  ." *Ross, supra,* p 1023.

*Per contra,* the dissent by Lumbard, Chief Judge, and Circuit Judges Moore and Friendly held:

"I would affirm the denials by the district courts \* \* \*.

"In my opinion these cases are governed by *United States, ex rel. Glenn* v. *McMann* (CA2, 1965), 349 F2d 1018 (the same cases cited by majority), which held that 'a voluntary guilty plea entered on advice of counsel is a waiver of all non-jurisdictional defects in any prior stage of the proceedings.' " *Ross, supra,* p 1029.

We are not at all unmindful that the purist logician will immediately protest that the above

---

[2] We eschew the muddy middle ground suggested by the majority that decision can rest upon the sufficiency of the supporting affidavit and the *weight* of the fact that petitioner was represented by counsel.

quotation is in itself a logical contradiction because an essential element of the conclusion is assumed in the premise, *i.e.,* that the plea was "voluntary" in the first instance, which is the very issue that is raised by the petition. We think that the meaning of the minority of the court is explained by its further writing. The plea is "voluntary" if it is knowingly and understandingly made with the benefit of counsel, irrespective of the existence of the illegally obtained confession.

" 'If a defendant desires to contest the voluntariness of his confession, he must do so by pleading not guilty and then raising the point upon the trial; he may not plead guilty and then, years later, at a time when the prosecution is perhaps unable to prove its case, assert his alleged constitutional violation. The issue as to whether the confession was illegally obtained is waived by the guilty plea.' " *Ross, supra,* p 1035 (dissenting opinion).

"No decision of the Supreme Court has held or even intimated that an accused who has been convicted upon a guilty plea, made on the advice of counsel after full explanation of its consequences and without coercion or trickery of any sort by the state and thus 'voluntary' *in the ordinary use of language,* is entitled to have the conviction set aside because the plea was influenced in greater or less degree by a previous act of the state in violation of his constitutional rights. *Ross, supra,* p 1039 (dissenting opinion). (Emphasis supplied.)

We think the emphasized language to be of the utmost importance. It dispels for us the logical contradiction we earlier mentioned. It pinpoints the abidingly important concept that where, as we think here, the trial judge has examined the accused in painstaking detail as to the reason for his plea, explained to him in precise terms all of his pre-plea alternatives, pointed out fully and fairly the conse-

quences of the plea, and where the accused was represented by counsel with whom he conferred three times before he proffered his plea, the plea, in fact and in law, was made "voluntarily" within that term's meaning "in the ordinary use of language". All prior non-jurisdictional defects were waived by the guilty plea.

We cannot resist adding the *caveat* contained in the dissent of the chief judge of the second circuit:

"As a majority of my colleagues have now clearly charted for all state prisoners who are imprisoned after pleas of guilty what they must allege in order to get a hearing, it will follow as surely as night follows day that the federal courts will be inundated with petitions which will total many times the 6,331 commenced in 1968."

We opine the result of a reversal here would have like effect on our already overburdened state trial bench.

We are bound precedentially by the opinions of two courts. We are bound in all cases by the holdings of the Supreme Court of Michigan. We are bound by the holdings of the United States Supreme Court in Federal constitutional questions.

While we accord respectful weight to the opinions of the United States Courts of Appeal, we are not bound by them.

In this case we reject the majority opinion in *Ross, supra,* and adopt the *ratio decidendi* of the dissent. We think it accords with the public policy of our state as expressed by the legislature and the policy of our Supreme Court as quoted in *People* v. *Dunn* (1968), 380 Mich 693.

"The import of both the rule and the statute is that on review courts should be concerned with substance, not with form, that the fundamental inquiry

is whether there has been a miscarriage of justice."
*Dunn, supra,* p 701.

One would be hard put to find a "miscarriage of justice" in the case at bar.

The order of the trial judge denying the motion to withdraw the plea is affirmed.

All concurred.

## ADDENDUM

*People* v. *Daniels* (1966), 2 Mich App 395; *People* v. *Carlisle* (1969), 19 Mich App 650; *Commonwealth ex rel. Herman* v. *Claudy* (1956), 350 US 116 (76 S Ct 223, 100 L Ed 126); *Smiley* v. *Wilson* (CA9, 1967), 378 F2d 144; *Norris* v. *Wilson* (CA9, 1967), 378 F2d 324; *People* v. *Spencer* (1967), 66 Cal 2d 158 (57 Cal Rptr 163, 424 P2d 715); *Commonwealth* v. *Garrett* (1967), 425 Pa 594 (229 A2d 922), and cases following: *People* v. *Nicholson* (1962), 11 NY 2d 1067 (230 NYS2d 220, 184 NE2d 190), *cert. den.* (1962), 371 US 929 (83 S Ct 300, 9 L Ed 2d 237), and cases following: *Caldwell* v. *Haskins* (1964), 176 Ohio St 261 (199 NE2d 116); *Richardson* v. *Williard* (1965), 241 Or 376 (406 P2d 156); *State* v. *Cooper* (1968), 182 Neb 765 (157 NW2d 412); *Williams* v. *Reincke* (1968), 157 Conn 143 (249 A2d 252); Yale Kamisar, "The Right to Counsel and the Fourteenth Amendment: A Dialogue on 'The Most Pervasive Right' of an Accused" (1962), 30 Chi L R 1.