ARA CHUCKWAGON OF DETROIT, INC. v LOBERT

1. COVENANTS—RESTRICTIVE COVENANTS—INJUNCTIONS—NONSIGNA-
   TORY—ACTUAL NOTICES—CONSPIRACY TO VIOLATE—COURT
   RULES.

   A nonsignatory to a restrictive covenant may be held in contempt
   for violating an injunction based on that covenant where the
   nonsignatory has actual notice of the injunctive order and acts
   and conspires with a signatory to violate the covenant (GCR
   1963, 718.9[4]).

2. CONTEMPT—ORDERS—VIOLATIONS—CLEAR AND UNEQUIVOCAL EVI-
   DENCE—CONTEMPT CITATIONS—APPEAL AND ERROR.

   A contempt order may be entered only when the violation alleged
   has been clearly and unequivocally shown; on appeal from a
   contempt citation, the findings of the lower court must be
   affirmed if there is competent evidence to support them.

3. COVENANTS—COVENANT NOT TO COMPETE—EMPLOYEE—EMPLOYER—
   TERMINATION OF EMPLOYMENT—TIME LIMITATIONS—STATUTES.

   A restrictive covenant whereby an employee agrees not to com-
   pete with an employer upon the termination of employment
   must be limited to 90 days after the termination of employ-
   ment (MCLA 445.766; MSA 28.66).

4. INJUNCTION—TEMPORARY RESTRAINING ORDER—IMPROPERLY
   GRANTED—JUDICIALLY VACATED—DETERMINATION OF INVALID-
   ITY.

   A temporary restraining order which has been improperly
   granted must be obeyed until judicially vacated; the determina-
   tion that such an order is invalid is one to be made by the
   courts, not by the parties.

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 312 *et seq.*
[2, 7] 17 Am Jur 2d, Contempt § 98.
[3] 54 Am Jur 2d, Monopolies, Restraints of Trade and Unfair Trade
     Practices § 542 *et seq.*
[4, 6] 42 Am Jur 2d, Injunctions § 13.
[5] 17 Am Jur 2d, Contempt §§ 62–76, 84, 115.
[8] 20 Am Jur 2d, Covenants, Conditions and Restrictions § 304.

5. CONTEMPT—ORDERS—ENFORCEMENT—PERSONAL JURISDICTION—SUBJECT MATTER JURISDICTION.

A contempt order may go unenforced only where the trial court issuing the order does not possess the requisite personal and subject matter jurisdiction to enter the order.

6. INJUNCTION—RESTRAINING ORDERS—DURATION OF ORDERS—ENFORCEMENT—CONTEMPT CITATIONS.

A restraining order remains in effect and is enforceable by a contempt citation where the restraint has not been suspended and the reasons for its existence continue.

7. CONTEMPT—CONTEMPT CITATIONS—COURT OF RECORD—INHERENT POWERS—DISOBEDIENCE OF ORDERS.

A court of record has the inherent power to punish, by contempt citation, a party for wilful, continuous, and contemptuous disobedience of its orders.

8. INJUNCTION—NOTICE—SUBSTITUTE NOTICE—COURT RULES.

Notice of an injunctive order is requisite to the enforcement of an injunction; notice of a plaintiff's motion to extend a restrictive covenant between the parties cannot serve as a substitute for the notice of an injunction (GCR 1963, 718.9[4]).

Appeal from Wayne, Thomas Roumell, J. Submitted March 4, 1976, at Detroit. (Docket Nos. 22725, 24330.) Decided May 27, 1976.

Complaint by ARA Chuckwagon of Detroit, Inc., against Robert Lobert and Pat's Catering Service, Inc., for orders restraining and enjoining the defendants from violating the terms of a restrictive covenant agreement between the plaintiff and defendant Lobert. Two separate contempt orders were entered against each defendant and the restrictive covenant period was extended. Defendants appeal. Affirmed in part, reversed in part.

*Donald A. Miller,* for plaintiff.

*K. Alexander,* for defendants.

Before: D. E. HOLBROOK, JR., P. J., and Mc-
GREGOR and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Defendants filed these consol-
idated appeals from several orders of the Wayne
County Circuit Court which, *inter alia,* issued two
contempt citations against each defendant. The
nature of this appeal requires a somewhat detailed
chronology.

On November 6, 1974, plaintiff filed a complaint
which sought a restraining order and a show cause
order against the named defendants. The com-
plaint averred that defendant Lobert had, until
October 26, 1974, driven a catering truck for plain-
tiff ARA Chuckwagon of Detroit (ARA). On that
date, Lobert quit his job with plaintiff on 20 min-
utes notice. When Lobert was hired, he had signed
a restrictive covenant by which he agreed to re-
frain from performing similar services for himself
or for a competitor of plaintiffs during a period of
90 days after his employment with plaintiff ended.
Plaintiff's complaint claimed that this contract
was found to be missing from the personnel files
on the day after Lobert quit.

The complaint asserted that, after he quit ARA,
Lobert "acting in concert with defendant Pat's
Catering Company, * * * diverted, solicited and
stole away plaintiff's customers" whom Lobert had
serviced while working for plaintiff. On November
6, the court issued an order restraining defendants
from soliciting the customers on plaintiff's "Route
60", that which Lobert had serviced. On November
20, after two days of testimony, the court issued a
preliminary injunction in which he restated the
mandate of the earlier restraining order:

" * * * the defendant, ROBERT LOBERT, his
agents, employees, servants and attorneys and those

persons acting in concert or participation with him who receive actual notice of this Order be and are hereby restrained and enjoined from in any way, directly or indirectly, soliciting or diverting or taking away, or attempting to solicit, divert or take away, any of the customers or patronage of customers of the plaintiff, for himself or for another engaged in a line of business which is like or competing with the business of the plaintiff, in violation of a Restrictive Covenant Agreement."

Within five days of the preliminary injunction, plaintiff returned to court and asked that defendants be held in contempt of court and accordingly punished for "open" and "arrogant" violation of both the restraining order and preliminary injunction. At a December 6, 1974, hearing, plaintiff's witness William Hall, a former ARA division manager, testified that Lobert had continued to service route 60 using a Pat's Catering truck, from the day he left ARA until November 6 when he was served with the restraining order. The next day, one Debbie Maniaci was seen servicing the route in the same truck used by Lobert.

Another ARA supervisor, Tony Napolitano, testified that Ms. Maniaci told customers on the route that they should buy from her rather than from ARA. Napolitano stated that he observed Mr. Hall show her a copy of the restraining order and warn her that she was violating its terms. He also saw one Robert Ihme, a supervisor for Pat's Catering, in the truck with Ms. Maniaci on November 7, 1974. Napolitano had a conversation with Mr. Ihme, who informed him that he was taking Ms. Maniaci around, showing her the route. On November 11, 1974, Napolitano observed Robert Lobert, driving his car around the route, behind the Pat's Catering truck.

At the close of the December 6 hearing, the

court did not enter a final ruling on plaintiff's motion. Rather, the court obtained promises that neither Lobert nor Pat's Catering nor anyone in the employ of either would serve plaintiff's route 60. The court indefinitely adjourned the proceedings with the proviso that evidence of other violations would be cause for contempt.

Ten days later, plaintiff initiated another request for show cause why defendants should not be held in contempt. Tony Napolitano again testified. He claimed that he observed David McKinder, an employee of Pat's Catering, servicing stops on route 60 while Robert Ihme followed and directed him. Linda Baisden, the ARA employee assigned to the route, testified that, after November 22, 1974, a truck operated by David McKinder shadowed her truck and competed with her at all the stops. Further, Ms. Baisden stated that on December 9 (after the first contempt hearing), a new truck and driver were servicing the route but she could not identify the truck, and its driver refused to identify himself.

Pat Gionnotta, owner of Pat's Catering, testified that he was in the business of selling goods and services and of leasing storage space to independent trucks. He testified that Lobert was an independent agent, not an employee, but admitted that Lobert had asked for permission to hire a girl to assist him. He testified that he knew Debbie Maniaci but that she worked for Lobert. He claimed that he did not always supervise Robert Ihme and that Ihme had accompanied Ms. Maniaci because of threats against her by ARA.

Lobert denied that he was responsible for Ms. Maniaci's servicing route 60. However, he admitted that he did drive the route in his automobile and that his wife rode the route with Ms. Maniaci.

Ms. Maniaci denied that she had been threatened by ARA. She stated that Giannotta and Lobert had trained her specifically to drive route 60.

The trial court thereupon held defendants Lobert and Pat's Catering as well as Debbie Maniaci and David McKinder in contempt of the court's November 6 restraining order. Lobert and Pat Gionnatta, as president of Pat's Catering, were fined $250 each and sentenced to 30 days in the Detroit House of Correction.

On January 6, 1975, plaintiff ARA filed a motion to have the restrictive covenant period run from December 16, 1974, the date the court found defendants guilty of contempt of court. Plaintiff argued that defendants "should not be able to have the advantage of the Restrictive Covenant period running in their favor while violating an Injunctive Order of the Court and the Restrictive Covenant Agreement". On February 7, 1975, the trial court "ORDERED that the ninety (90) day statutory period contemplated by MCLA 445.766, sec. 6 [MSA 28.66] applicable to the Restrictive Covenant Agreement of Defendant, Robert Lobert, expire on March 16, 1975. Plaintiff may claim damages from October 25, 1974, through January 25, 1975", the 90-day period from the end of Lobert's employment with plaintiff.

Another motion for order to show cause for contempt was then filed on February 14, 1975, by plaintiff. Therein, plaintiff averred a continuing pattern of open defiance by defendants of the court's order restraining defendants from soliciting, diverting or taking away plaintiff's customers. Specifically, plaintiff claimed that, from February 10 through February 14, 1975, Pat's Catering employees Robert Ihme and Kathy Lyons serviced customers along plaintiff's route 60. Plaintiff also

alleged that Robert Lobert serviced these customers between January 26, the date the original 90-day period ended, and February 7, 1975, and thereafter conspired with Pat's Catering to do so.

After a two day hearing, the court issued a comprehensive opinion and order. The court held that its February 7 extension of the restrictive covenant was a "valid and correct exercise of the Court's equitable jurisdiction". It viewed the February 7 order as a reaffirmance and extension of its November 20, 1974, preliminary injunction. The court found that defendant Lobert serviced plaintiff's route 60 during the period from January 27 through February 7, 1975, in the belief that the 90-day restrictive covenant had lapsed on January 26. The court found Lobert's testimony "evasive and wittingly vague".

The court stated in its conclusions:

"That upon valid testimony and in view of the Court's findings the Court concludes that Robert Lobert did defy the Court's order and further the Court concludes that from the date of October 25, 1974 through February 10, 1975, he was in concert and alliance with Pat's Catering Service, Inc. and its president to disrupt, invade and improperly pirate the accounts of ARA's Route 60 which he, up to the date of October 25, 1974, serviced for ARA.

" * * * that Pat's Catering Service, Inc., through its officers, employees and agents, has violated each and every order of this Court in an insipid defiance of the lawful actions of this Court and further, the Court concludes that this course of conduct has been directed, motivated and concocted by Pat Gionnatta, its president, whose invidious outlook of the rights of others has caused him to be a defendant in other prior lawsuits upon like allegations and accusations as are in this litigation involved.

" * * * that Kathy Lyons and Robert Ihme were part and parcel of the total scheme to disrupt and

fragment ARA's Route 60. However, the Court further concludes that they were inveigled into doing so by the beguiling of Robert Lobert and the domineering influence of Pat Gionnatta who, after all, was their employer who paid their salary and were kept on the job if they did his bidding."

The court then held Robert Lobert, Pat's Catering, Pat Gionnatta, Kathy Lyons and Robert Ihme in contempt. Lobert and Gionnatta were each fined $250 and sentenced to 30 days in the Detroit House of Correction. Lyons and Ihme were each fined $50. In addition, the court ruled that the restrictive covenant agreement run from May 2, 1975, the date of its opinion.

Defendants Lobert and Pat's Catering have appealed all of the foregoing rulings of the trial court. While defendants have raised a plethora of issues in a blizzard of briefs, they have supported these claims with a dearth of authority and have failed to argue each issue separately. Nonetheless, we will discuss each claim *seriatim*, combining several for the sake of clarity.

I. *December 6, 1974, contempt order.*

A. Defendant Pat's Catering attacks the validity of the first contempt judgment by claiming that, since Pat's Catering was not a signatory to the restrictive covenant, it could not be held in contempt for violating an injunction based on that covenant. We disagree. Pursuant to GCR 1963, 718.9(4), a restraining order or injunction is binding on:

"the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them *who receive actual notice of the order by personal service or otherwise."* (Emphasis supplied.)

Case law has also stressed that nonsignatories to a restrictive agreement who act and conspire with a signatory to cause its violation are equally liable to restraint orders and to contempt proceedings. *Owens v Hatler,* 373 Mich 289; 129 NW2d 404 (1964), *Candler v Wallace Candler, Inc,* 365 Mich 613; 113 NW2d 901 (1962). In the instant case, Pat's Catering, through Pat Gionnotta, had knowledge of the preliminary injunction through effective service on November 20, 1974. Pat's was, therefore, properly subject to the court's contempt power.

B. Defendant Lobert contends, similarly, that he should not have been held in contempt of court because of the actions of Pat's Catering and its employees. He claims that the evidence shows that he stopped servicing route 60 after the November 7, 1974, restraining order. However, as plaintiff notes, the evidence also demonstrated a course of collusion between Lobert, his wife and Pat's Catering to service the route after November 7.

A contempt order may be entered only when the violation alleged has been "clearly and unequivocally shown". *People v Matish,* 384 Mich 568, 572; 184 NW2d 915 (1971). On appeal from a contempt citation, "[t]he findings of the lower court must be affirmed if there is competent evidence to support [them]". *Cross Co v UAW Local No 155 (AFL-CIO),* 377 Mich 202, 218; 139 NW2d 694 (1966) (citation omitted). In the instant case, the evidence of Lobert's violation is both competent and substantial.

II. *May 2, 1975, contempt order.*

A. Both Lobert and Pat's Catering use the same argument to attack the court's May 2, 1975, contempt order. They claim that the court's order of February 7, 1975, on which the May 2 contempt was based, represented an invalid extension of the 90-day restrictive covenant period.

The original covenant ran from October 25, 1974, through January 25, 1975. Reasoning that defendants should not benefit from their contempt, the court, on two occasions, ordered that the beginning date of the 90-day period be changed from October 25. It first altered the date to December 16, 1974, the date of the first contempt order. The court then ruled that the period commence on May 2, 1975, the date of the second contempt.

The statute on which the covenant and the court orders are based is MCLA 445.766; MSA 28.66, which provides:

"This act [forbidding contracts in restraint of trade] shall not apply * * * to any contract of employment under which the employer furnishes or discloses to the employe a list of customers or patrons, commonly called a route list, within certain territory in which such employee is to work, in which contract the employe agrees not to perform similar services in such territory for himself or another engaged in a like or competing line of business *for a period of ninety days after the termination of such contract or services.*" (Emphasis supplied.)

Defendants argue that any such restrictive covenant must be limited to 90 days after termination. Plaintiff contends that the extension of the restriction was within the trial court's broad equitable powers. We agree with defendants. The above statutory authorization of contractual restraints on competition is an exception to a long statutory and case law history barring all such instruments. See MCLA 445.761; MSA 28.61, *Wedin v Atherholt,* 298 Mich 142; 298 NW 483 (1941), *Stoia v Miskinis* 298 Mich 105; 298 NW 469 (1941). Covenants not to compete have always been governed by the rule of reason. *Brillhart v Danneffel,* 36 Mich App 359; 194 NW2d 63 (1971). We read

MCLA 445.766; MSA 28.66 as a legislative pronouncement that 90 days is the maximum reasonable period for an employer to place such restraints on a route driver.

The fact that we hold invalid the trial court's extension of the restrictive covenant does not, however, avail defendants. As plaintiff notes, the law is clear that where a temporary restraining order has been improperly granted, it must be obeyed until judicially vacated. *Rose v Aaron,* 345 Mich 613; 76 NW2d 829 (1956), *Berry Pontiac, Inc v Burke,* 19 Mich App 648; 173 NW2d 243 (1969). The determination that such an order is invalid is one to be made by the courts, not by the parties. *City of Troy v Holcomb,* 362 Mich 163; 106 NW2d 762 (1961). Only those contempt orders issued by a court without jurisdiction may go unenforced. *In re Mead,* 220 Mich 480; 190 NW 235 (1922), *People v Hernandez,* 52 Mich App 56; 216 NW2d 438 (1974), *lv den* 391 Mich 830 (1974). The trial court here clearly possessed the requisite personal and subject matter jurisdiction to enter its order. The proceedings were properly initiated by an order to show cause. They could also be legitimately seen as a continuation of prior proceedings. See *Petrucci v Petrucci,* 35 Mich App 412; 192 NW2d 532 (1971). In essence, defendants contend that a court loses its jurisdiction by issuing an incorrect order. The illogic of such a position is self-evident.

B. Defendant Pat's Catering attacks the May 2, 1975, contempt citation on one further basis. Pat's Catering argues that, because the February 7 extension of the restrictive covenant cited only Lobert, it cannot be used as a basis for a contempt citation against Pat's. We find this argument meritless for two related reasons. First, the extension of the restrictive covenant also served to extend

the injunction against violation by any party with notice of the injunction. It is clear from the language of the pleadings and of the court's directions that this was one continuous proceeding designed to prevent defendants' pirating of plaintiff's route 60. It should have been equally as clear that the restrictive covenant was inextricably linked to the judicial restraints imposed to effectuate its terms.

We find several parallels between this case and *Craig v Kelley,* 311 Mich 167; 18 NW2d 413 (1945). There, as here, a temporary restraining order was issued. In both cases, the matter was continued without an express extension of the restraining order. In both cases, the contemnor defended by "relying on the fact that it [the order] was not expressly continued in effect". *Id.* at 178. The *Craig* Court held that, since the restraint was never suspended and since the reasons for its existence continued, the order remained in effect and was enforceable by a contempt citation. The court noted that the contempt "was done by subterfuge, which is as much a contempt of court as though done by more direct action". *Id.* (Citation omitted.) We find this description equally applicable here.

Second, the May 2 contempt citation was not based solely on the February 7 extension. Rather, the citation was based on the court's conclusion that:

"the defendants have violated the November 6, 1974 preliminary injunction as well as all of the subsequent orders of the Court * * * [and] have engaged in a continuous and systematic course of conduct calculated to disrupt and otherwise pirate the accounts on ARA's Route 60."

Our jurisprudence has long recognized the inher-

ent power of a court of record to punish, by contempt citation, a party for wilful, continuous, and contemptuous disobedience of its orders. *Nichols v Judge of Superior Court of Grand Rapids,* 130 Mich 187; 89 NW 691 (1902), *People v Joseph,* 384 Mich 24; 179 NW2d 383 (1970). See also Const 1963, art 6, § 1, MCLA 600.1701(5); MSA 27A.1701(5). The trial court effectively used that power here.

C. Defendant Lobert questions the May 2 contempt citation against him on a similar basis. He claims that the court erred by punishing him for acts undertaken during the period between the end of the original restrictive covenant period and the February 7, 1975, extension of that covenant. Lobert argues that the contempt citation represents an illegal retroactive application of the February 7 order.

We agree that a contempt citation based on acts undertaken during the January 25–February 7, 1975, period would be invalid. The restrictive covenant was not then in effect. Contrary to plaintiff's contention, notice of plaintiff's motion to extend the covenant cannot serve as a substitute for the notice of an injunction. Such notice is requisite to the enforcement of an injunction. GCR 1963, 718.9(4). However, as we noted above, the May 2, 1975, contempt citations against both Lobert and Pat's Catering were based not on single acts but on a systematic, continuous and wilful disregard for the court's orders. Even excluding consideration of Lobert's activities during the January 25 through February 7 period, we find sufficient evidence on the record to support the May 2, 1975, contempt citation against defendant Lobert.

For the reasons stated above, the December 6, 1974, and May 2, 1975, findings of contempt

against all defendants are affirmed notwithstanding the invalidity of the court's extension of the restrictive covenant. The trial court's orders extending the restrictive covenant period beyond January 25, 1975, are vacated.

No costs, neither party having prevailed in full.