BIRKENSHAW v CITY OF DETROIT

Docket Nos. 48654, 49989 through 49994. Submitted June 8, 1981, at Detroit.—Decided October 20, 1981. Leave to appeal applied for.

This appeal is a consolidation of six cases, all of which arose from the City of Detroit's being found guilty of criminal contempt of court for wilfully and intentionally violating three separate temporary restraining orders issued by Wayne Circuit Court, Charles S. Farmer, J. The first restraining order was issued on November 14, 1974, in connection with a suit brought by plaintiff Robert Birkenshaw doing business as Bisco's Lounge against the City of Detroit, the Police Commissioner, the Detroit Police Department and certain police officers individually for alleged unwarranted arrest and harassment of the plaintiff, his customers and his employees, including plaintiffs Ioan Halmaghi, George David, Diana Huggins and Christopher Magnes. The restraining order restricted police entry into Bisco's Lounge, which features sexually oriented entertainment. On

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts § 73.
46 Am Jur 2d, Judgments § 6.
[2] 17 Am Jur 2d, Contempt §§ 4, 8.
[3] 5 Am Jur 2d, Appeal and Error §§ 839, 841.
[4] 5 Am Jur 2d, Appeal and Error §§ 545, 546.
[5] 76 Am Jur 2d, Trial §§ 1258, 1259, 1261.
[6] 20 Am Jur 2d, Courts § 70.
[7] 22 Am Jur 2d, Damages §§ 165-167.
Attorneys' fees or other expenses of litigation as element in measuring exemplary or punitive damages. 30 ALR3d 1443.
[8-10] 22 Am Jur 2d, Damages § 237.
[11, 12, 14] 29 Am Jur 2d, Evidence §§ 425-427.
68 Am Jur 2d, Searches and Seizures §§ 2-6.
Modern status of rule governing admissibility of evidence obtained by unlawful search and seizure. 50 ALR2d 531.
[13] 68 Am Jur 2d, Searches and Seizures § 8.
[14] 17 Am Jur 2d, Contempt § 11.
70 Am Jur 2d, Sheriffs, Police, and Constables § 207.
[15] 27 Am Jur 2d, Equity § 136 et seq.
[16] 42 Am Jur 2d, Injunctions §§ 323, 336.

April 16, 1975, an *ex parte* restraining order was issued barring police entry into Bisco's except pursuant to a valid warrant or to a complaint that a felony was taking place therein. On July 1, 1977, the third restraining order was issued, dissolving both of the previous orders. In January 1978, Birkenshaw doing business as Bisco's Lounge filed a petition seeking criminal contempt citations against defendants for violation of the restraining orders. The trial court concluded that the individual police officers had not acted in contempt of court but that the Detroit Police Department had wilfully and intentionally violated the restraining orders and entered an order against the City of Detroit awarding $15,000 to Birkenshaw for loss of time, reasonable attorney fees and other expenses, and an additional $3,600 plus court costs for reasonable attorney fees in the contempt proceedings, Charles S. Farmer, J. Birkenshaw filed a motion for reconsideration and defendant City of Detroit filed a motion for a new trial or, in the alternative, to modify, alter or amend the judgment. Plaintiff's motion was granted and the court awarded $70,784.49 for attorney fees and costs generated from defending cases resulting from police entry into Bisco's in violation of the restraining orders and $3,600 for exemplary damages, Charles S. Farmer, J. The court also ordered that all evidence emanating from observations by defendant City of Detroit in violation of the restraining orders be suppressed. Defendant appeals. *Held:*

1. The trial court did not err in finding that the *ex parte* order of April 16, 1975, was not dissolved by oral pronouncement of the court on May 5, 1975. The order remained in effect until modified by a subsequent written order.

2. Defendant's contention that the plaintiff's contempt action was barred by the equitable doctrine of laches was not raised in the trial proceedings and cannot be considered on appeal.

3. The trial court's finding that the City of Detroit had wilfully and intentionally violated the temporary restraining orders is not "clearly erroneous" and will not, therefore, be set aside.

4. Defendant's argument that there was insufficient evidence that it had violated the July 1, 1977, order restraining harassment of plaintiff because the definition of harassment was not made part of the order fails because defendant neither cited authority nor presented policy arguments in support of its contention.

5. The trial court's opinion reveals the factual basis for its ultimate conclusions. The court did not violate the court rules

by failing to set forth specific findings of fact on the alleged violation of the July 1, 1977, order.

6. The trial court did not err in finding that the costs of defense in the actions which resulted from the arrests made on the date defendant was found to be in contempt of court were damages proximately caused by defendant's actions and were, therefore, recoverable damages.

7. Defendant has failed to show that the trial court erred by failing to consider plaintiff's alleged failure to mitigate damages. The trial court record shows that the trial court did make special considerations regarding the nature and extent of the violations, the convictions and dismissals of the citations and arrests, the expense in appeals and litigation and the good faith of the parties, their motives and intent.

8. The $3,600 exemplary damage award was actually a punitive damages award intended to punish the defendant for, and to discourage the defendant from, continuing its intentional illegal acts. Exemplary damages are recoverable as compensation to the plaintiff, not as punishment of the defendant. The exemplary damage award is vacated.

9. The trial court erred in suppressing all evidence emanating from observations by defendant City of Detroit in violation of the restraining order.

10. Defendant's argument that the trial court erred in granting the temporary restraining orders in violation of the equitable "clean hands doctrine" is without merit because even an improperly granted restraining order or injunction must be complied with until it has been judicially vacated.

The convictions for criminal contempt are affirmed. The order of the trial court is affirmed in part and reversed in part. The order of suppression of evidence is reversed.

1. JUDGMENTS — COURTS — ORAL STATEMENTS.
Courts speak through their judgments and decrees, not their oral statements or written opinions.

2. CONTEMPT — CRIMINAL CONTEMPT — COURTS — WILFUL DISREGARD OF AUTHORITY OR ORDERS.
An essential element of the crime of criminal· contempt is that the defendant acted culpably, in wilful disregard or disobedience of the authority or orders of the court.

3. APPEAL — BENCH TRIAL — FINDINGS OF FACT — COURT RULES.
An appellate court will set aside the findings of fact of a trial judge sitting without a jury only when such findings are clearly erroneous; a finding is clearly erroneous when, although there

is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed (GCR 1963, 517.1).

4. APPEAL — FAILURE TO ARGUE.

A mere statement of position without argument or citation of authority is insufficient to bring an issue before an appellate court.

5. COURTS — COURT RULES — BENCH TRIAL — FINDINGS OF FACT — CONCLUSIONS OF LAW.

A trial court sitting without a jury is required by court rule to make special findings of fact and to state separately its conclusions of law, and minimal compliance with the rule is satisfactory, provided the court reveals the factual basis for its ultimate conclusions (GCR 1963, 517.1).

6. COURTS — BREVITY OF OPINION.

Brevity alone is not fatal to a trial court's opinion.

7. DAMAGES — ATTORNEYS' FEES — PRIOR LITIGATION.

A plaintiff may recover all the expenses, including attorneys' fees, reasonably incurred in prior litigation where the present defendant has by his wrongful conduct caused the plaintiff to defend or prosecute previous legal proceedings.

8. DAMAGES — EXEMPLARY DAMAGES.

Exemplary damages are recoverable as compensation to the plaintiff, not as punishment of the defendant.

9. DAMAGES — EXEMPLARY DAMAGES.

An award of exemplary damages is proper if it compensates a plaintiff for the humiliation, sense of outrage, and indignity resulting from injuries maliciously, wilfully and wantonly inflicted by the defendant; the reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done the plaintiff's feelings.

10. DAMAGES — EXEMPLARY DAMAGES — NATURE OF EXEMPLARY DAMAGES.

Only exemplary damages which are compensatory in nature are allowable in this state; they are never allowed for the purpose of punishing or making an example of a defendant.

11. SEARCHES AND SEIZURES — EVIDENCE — EXCLUSIONARY RULE.

Evidence acquired by police during a constitutionally valid search

and seizure need not be suppressed under the exclusionary rule even though the search was conducted in violation of a court order because the exclusionary rule applies to constitutionally defective searches and seizures, not to violations of statutes or court orders.

12. EVIDENCE — EXCLUSIONARY RULE.
   The exclusionary rule, which excludes evidence obtained as a result of a constitutionally invalid search and seizure, has a dual purpose: (1) protection of the right to privacy, and (2) deterrence of police misconduct.

13. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW — REASONABLE EXPECTATION OF PRIVACY.
   A search, for Fourth Amendment purposes, occurs only when a person has a reasonable expectation of privacy in the area searched or the materials seized; what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection (US Const, Am IV).

14. COURTS — COURT ORDERS — VIOLATIONS BY POLICE — DETERRENCE.
   Deterrence of police violation of court orders is best achieved by the threat of civil and criminal contempt citations; the exclusionary rule should not be used to exclude evidence obtained as a result of a search in violation of a court order.

15. EQUITY — CLEAN HANDS.
   One who seeks the aid of equity must come with clean hands.

16. INJUNCTIONS — TEMPORARY RESTRAINING ORDERS — IMPROPERLY GRANTED ORDERS AND INJUNCTIONS.
   An improperly granted restraining order or injunction must be complied with until it has been judicially vacated.

*Durant & Durant, P.C.,* for plaintiffs.

*George W. Crockett, Jr.,* Acting Corporation Counsel, and *Robert Horvath,* Assistant Corporation Counsel, for defendant.

Before: D. C. RILEY, P.J., and CYNAR and H. R. GAGE,* JJ.

* Circuit judge, sitting on the Court of Appeals by assignment.

H. R. GAGE, J. Six consolidated cases are involved in this appeal, all of which arose from the trial court's finding defendant City of Detroit guilty of criminal contempt of court.

Bisco's Lounge is an establishment which features sexually oriented entertainment. It is owned and operated by plaintiff Birkenshaw. Plaintiffs Halmaghi, David, Magnes and Huggins were employees of Bisco's who were individually charged with fostering or participating in various acts of lewd and lascivious behavior.

In 1974, plaintiff Birkenshaw sued the City of Detroit, the Police Commissioner, the Detroit Police Department and certain police officers individually for alleged unwarranted arrest and harassment of the plaintiff himself and his customers and employees. On November 14, 1974, the trial court issued the first of three restraining orders restricting police entry into Bisco's Lounge. On April 16, 1975, the trial court issued an *ex parte* restraining order barring police entry except pursuant to a valid warrant or to a complaint that a felony was taking place therein. At a show-cause hearing on May 5, 1975, the trial court indicated a willingness to modify the *ex parte* order of April 16, 1975. However, a third restraining order, dissolving both the November 14, 1974, and the April 16, 1975, orders, was not entered until July 1, 1977.

In January 1978, Birkenshaw doing business as Bisco's Lounge filed a petition seeking criminal contempt citations against the City of Detroit, the Detroit Police Department and various individual police officers for entering, arresting and harassing the petitioner and his employees in violation of the restraining orders. Plaintiff alleged that defendants violated the *ex parte* order of April 16, 1975,

on ten separate occasions. Plaintiff also alleged that on July 20, 1977, defendants violated the temporary restraining order of July 1, 1977. After lengthy contempt hearings, the trial court issued an opinion on June 30, 1978, in which it concluded that although the individual police officers had not acted in contempt of court, the Detroit Police Department had wilfully and intentionally violated the restraining orders then in effect. On August 15, 1978, the trial court entered an order against the city awarding plaintiff Birkenshaw $15,000 for loss of time, reasonable attorney fees and other expenses, and an additional $3,600 plus court costs for reasonable attorney fees in the contempt proceedings.

Plaintiff then filed a motion for reconsideration and defendant City of Detroit filed a motion for a new trial or, alternatively, to modify, alter or amend the judgment. On November 15, 1978, plaintiff's motion was granted. The trial court awarded plaintiff Birkenshaw $70,784.49 for attorney fees and costs generated from defending cases resulting from police entry into Bisco's in violation of the temporary restraining orders. The court also awarded $3,600 for exemplary damages. Further, the court ordered that "all evidence, whether tangible or intangible, emanating from observations by defendant City of Detroit 'in violation of the temporary restraining order' shall be suppressed".

Defendant City of Detroit raises seven issues on this appeal. First, defendant argues that the trial court erred in ruling that the *ex parte* order of April 16, 1975, was not dissolved until July 1, 1977. In support, defendant posits an argument of equitable substance over form. Since the trial judge expressed his dissatisfaction with the extent and scope of the temporary restraining order and

a desire for its modification on May 5, 1975, defendant submits that the order was de facto dissolved on that date. We do not agree. "The rule is well established that courts speak through their judgments and decrees, not their oral statements or written opinions." *Tiedman v Tiedman,* 400 Mich 571, 576; 255 NW2d 632 (1977), accord, *Hosner v Brown,* 40 Mich App 515; 199 NW2d 295 (1972), *LeTarte v LeTarte,* 32 Mich App 289; 188 NW2d 673 (1971). The trial court did not err in finding that the *ex parte* order of April 16, 1975, was not dissolved by oral pronouncement of the court on May 5, 1975. The order remained in effect until modified by a subsequent written order.

Second, defendant argues that the plaintiff's contempt action was barred by the equitable doctrine of laches. Without reaching the merits of this contention, we note that since the defense of laches was not raised in the trial court below, the issue cannot now be considered on appeal. *American Electrical Steel Co v Scarpace,* 399 Mich 306, 309; 249 NW2d 70 (1976), *Boden v Renihan,* 299 Mich 226; 300 NW 53 (1941).

Defendant next contends that the trial court erred in finding that the City of Detroit wilfully and intentionally violated the temporary restraining orders of April 16, 1975, and July 1, 1977. The city avers that insufficient evidence was set forth to support the trial court's finding. Further, defendant argues that the trial court did not comply with GCR 1963, 517 in setting forth adequate findings of fact with respect to the alleged violation of the July 1, 1977, order.

An essential element of the crime of criminal contempt is that the defendant acted culpably, in "wilful disregard or disobedience of the authority or orders of the court". *People v Matish,* 384 Mich

568, 572; 184 NW2d 915 (1971). The question presented is whether there was sufficient evidence of that element from which a rational trier of fact could find defendant guilty of such beyond a reasonable doubt.

At the contempt hearings, the city argued that it could not have acted in wilful violation of the *ex parte* order of April 16 because its attorney had advised it as of May 5, 1975, that the order was no longer in effect. The trial court below specifically noted defendant's argument but after examination of "the overall proof, testimony and exhibits" concluded that the defendant City of Detroit wilfully and intentionally violated the restraining orders in effect. The court specifically found that plaintiff had established beyond a reasonable doubt that defendant "had knowledge of the contents and existence of the temporary restraining orders and their injunctive nature".

Under GCR 1963, 517.1, an appellate court will set aside the findings of fact of a trial judge sitting without a jury only when such findings are clearly erroneous. *Tuttle v Dep't of State Highways*, 397 Mich 44, 46; 243 NW2d 244 (1976). A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Id.* We are not left with such a conviction and thus find no error.

We further find unpersuasive defendant's argument that there was insufficient evidence that on July 20, 1977, defendant violated the order of July 1, 1977. The July 1, 1977, order provided in part that "defendants, their agents, servants and employees, shall be and hereby are restrained from harassing the plaintiff, his employees, or patrons".

A definition of harassment was attached to the order and was apparently read into the record. Defendant argues that since the definition of harassment was not part of the order, the city could not be cited for contempt for violating such. Defendant has neither cited authority nor presented policy arguments in support of this contention. It is therefore abandoned. *People v Sullivan,* 97 Mich App 488, 491; 296 NW2d 81 (1980).

Defendant also argues that any injunction against "harassment" is void for vagueness. Citation to *Morgan v Detroit,* 389 F Supp 922 (ED Mich, 1975), and *People v Howell,* 396 Mich 16; 238 NW2d 148 (1976), is inapposite since both cases address statutory due process challenges.

Defendant argues that the trial court's failure to set forth specific findings of fact on the alleged violation of the July 1, 1977, order constituted a violation of GCR 1963, 517. Rule 517.1 specifically provides that a court's findings "will be sufficient if the court makes brief, definite, and pertinent findings and conclusions upon the contested matters without over elaboration of detail or particularization of facts". Minimal compliance with the court rule is satisfactory, provided it reveals the factual basis for the court's ultimate conclusions. Brevity alone is not fatal to a trial court's opinion. *Powell v Collias,* 59 Mich App 709, 714; 229 NW2d 897 (1975), citing *Commercial Construction Co v Elsman Enterprises, Inc,* 22 Mich App 238, 241; 177 NW2d 447 (1970). The trial court's opinion in this case reveals the factual basis for its ultimate conclusions. We find that the opinion of June 30, 1978, at least minimally complies with the requirements of GCR 1963, 517.1 with respect to defendant's violation of the July 1, 1977, temporary restraining order.

The city next challenges the award of $70,734.49 in costs and attorney fees, contending that the costs were not proximately caused by defendant's actions and, further, that the trial court erred in failing to consider plaintiff's failure to mitigate damages. A hearing apparently was held on the issue of damages on October 30, 1978, after plaintiff filed its motion for reconsideration. The trial court awarded the costs of defense in the actions which resulted from the arrests made on the date defendant was found to be in contempt of court as damages proximately caused by defendant's actions. Michigan courts have recognized that attorney fees incurred in prior litigation are recoverable as damages if proximately caused by a defendant's wrongful conduct. *Dassance v Nienhuis,* 57 Mich App 422, 436-437; 225 NW2d 789 (1975). Also see *State Farm Mutual Automobile Ins Co v Allen,* 50 Mich App 71, 78-79; 212 NW2d 821 (1973). The court properly applied the legal measure of damages in tort as enunciated in 4 Restatement Torts, § 914, pp 591-593. The only damages recoverable were those damages proximately caused by defendant's conduct. See *Woodyard v Barnett,* 335 Mich 352, 358; 56 NW2d 214 (1953). We find that the court did not err in finding the damages imposed to be proximately caused by defendant's wrongful acts.

Defendant also claims that the trial court failed to consider plaintiff's failure to mitigate damages. We do not agree. The trial court stated that special consideration must be given to "the nature and extent of the violations, the convictions and dismissals of the citations and arrests, the expense in appeals and litigation, along with the good faith of the parties, their motives and intent". In light of this statement, defendant has failed to show error on the part of the trial court.

In addition, defendant asserts that the lower court erred in awarding $3,600 in exemplary damages. In Michigan, exemplary damages are recoverable as compensation to the plaintiff, not as punishment of the defendant. *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401, 419; 295 NW2d 50 (1980). "An award of exemplary damages is considered proper if it compensates a plaintiff for the 'humiliation, sense of outrage, and indignity' resulting from injuries 'maliciously, wilfully and wantonly' inflicted by the defendant. * * * [T]he reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done the plaintiff's feelings." *Id.* Punitive damages, on the other hand, are not recoverable. *Ray v Detroit,* 67 Mich App 702, 704; 242 NW2d 494 (1976). The lower court awarded exemplary damages for "willful and intentional regard *[sic]* or disobedience of the temporary restraining order issued by this court against defendant". While evidence in the record below indicates that defendant wilfully and wantonly violated the restraining orders, there was no evidence presented as to any damage to the plaintiff's feelings or some other indignity or humiliation. We believe that the "exemplary" damages awarded below were actually punitive damages intended to punish the defendant for, and to discourage the defendant from, continuing its intentional illegal acts. Accordingly, the exemplary damage award is vacated.

The defendant next challenges the trial court's suppression of evidence obtained in violation of the *ex parte* order. Defendant contends that the lower court erred in suppressing "all evidence, whether tangible or intangible, emanating from observations by defendant City of Detroit 'in violation of

the temporary restraining order' ". We agree. The per se exclusionary rule is applicable to constitutionally defective searches and seizures. *People v Livingston,* 64 Mich App 247, 255; 236 NW2d 63 (1975). Under the facts of this case, there is no reason to exclude the evidence in question. Examination of the exclusionary rule itself dictates this result. "The exclusionary rule has a dual purpose: (1) protection of the right to privacy, and (2) deterrence of police misconduct." *People v Warner,* 401 Mich 186, 209; 258 NW2d 385 (1977). Neither of these purposes would be served by an extension of the rule in this case.

A search, for Fourth Amendment purposes, occurs only when a person has a reasonable expectation of privacy. *Katz v United States,* 389 US 347, 360-361; 88 S Ct 507; 19 L Ed 2d 576 (1967) (HARLAN, J., concurring), *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz, supra,* 351, *People v Whalen, supra,* 677. We believe that none of the plaintiffs in the instant case, including plaintiff Birkenshaw, had a reasonable expectation of privacy during business hours in Bisco's Lounge, a business open to the general public.

Extension of the exclusionary rule to violations of court orders is unwarranted. We note that statutory violations do not merit the imposition of the exclusionary rule. *People v Livingston, supra,* 255 (violation of MCL 750.539a *et seq.;* MSA 28.807[1] *et seq.), People v. Burdo,* 56 Mich App 48, 52; 223 NW2d 358 (1974) (violation of MCL 764.15[a]; MSA 28.874[a]). Also see *People v Green,* 405 Mich 273; 274 NW2d 448 (1979) (ethical violations of Code of Professional Responsibility). The

deterrent aim of the rule would in no way be served by holding it applicable to this particular case. We believe that deterrence of police misconduct is best achieved by the threat of civil and criminal contempt citations. Thus we find that the exclusionary rule has no application to police violations of a court order per se. The trial court erred in ordering the evidence suppressed.

Finally, defendant claims that the trial court erred in granting the temporary restraining orders in violation of the equitable "clean hands doctrine". While it is true that "one who seeks the aid of equity must come in with clean hands", *Stachnik v Winkel,* 394 Mich 375, 382; 230 NW2d 529 (1975), it is also true that even an improperly granted restraining order or injunction must be complied with until it has been judicially vacated. *Cross Co v UAW Local No 155 (AFL-CIO),* 371 Mich 184, 195; 123 NW2d 215 (1963), *Berry Pontiac, Inc v Burke,* 19 Mich App 648, 652; 173 NW2d 243 (1969). Defendant's equitable arguments are, therefore, without merit.

The convictions for criminal contempt are affirmed. The November 15, 1979, order of the trial court is affirmed in part and reversed in part. The order of suppression of evidence is reversed.