EVERETT v EVERETT

Docket No. 127293. Submitted February 5, 1992, at Lansing. Decided July 7, 1992, at 9:35 A.M.

John V. Everett was granted a divorce from Lynne S. Everett in the Washtenaw Circuit Court, Edward D. Deake, J. He appealed, alleging that the court erred with regard to the division of property.

The Court of Appeals *held:*

1. The trial court complied with the requirement of MCR 2.517(A)(1) that it find the facts specially; however, the court's view of the evidence with regard to the value of the options owned by the plaintiff to purchase shares of stock in his employer's company is not plausible. The case must be remanded for a revaluation of the plaintiff's stock options.

2. The judgment of divorce must contain an order to exercise the matured options in order to avoid an inequitable property distribution caused by fluctuating market prices.

3. The present value of the stock options is to be calculated by subtracting the cost of the option from the market price of the stock. The actual date to be used to determine the market price for valuation purposes is within the discretion of the trial court.

4. The trial court erred in valuing the stock options without taking into consideration the tax consequences when exercised.

5. The trial court erred in finding the same present value for all the plaintiff's options on 3,660 shares of stock where the options with regard to two hundred of those shares had not yet matured. The trial court must divide these options in a manner that protects the defendant's equitable share.

6. The trial court did not clearly err in valuing the home in which the plaintiff lives.

Reversed and remanded.

References

Am Jur 2d, Divorce and Separation §§ 901, 947.

Divorce and separation: treatment of stock options for purposes of dividing marital property. 46 ALR4th 640.

Valuation of stock options for purposes of divorce court's property distribution. 46 ALR4th 689.

1. DIVORCE — PROPERTY DIVISION — STOCK OPTIONS — PRESENT
    VALUE.

    The present value of stock options is to be calculated in divorce
    proceedings by subtracting the cost of the options from the
    market price of the stock, and consideration should be given to
    the tax consequences when the options are exercised; the date
    to be used to determine the market price is within the discre-
    tion of the trial court.

2. DIVORCE — PROPERTY DIVISION — STOCK OPTIONS — PRESENT
    VALUE.

    Stock options that have not matured and therefore may never be
    exercised should not be given the same present value, for
    purposes of a division of marital property in a divorce action,
    as matured stock options, the value of which is readily ascer-
    tainable.

*Judith A. Curtis,* for the plaintiff.

*Dykema Gossett* (by *E. Edward Hood* and *Daniel R. Shemke*), for the defendant.

Before: HOLBROOK, JR., P.J., and GRIFFIN and MARILYN KELLY, JJ.

PER CURIAM. Plaintiff appeals as of right from the property division incorporated in the trial court's judgment of divorce. We reverse.

The parties were married on July 10, 1965, and have two adult children. They separated in June 1986. Plaintiff filed for divorce on March 25, 1987. Trial was held in September 1989 and January 1990.

Plaintiff claims that the trial court erred in finding that stock options plaintiff received through his employment were valued at $102,445. Plaintiff does not contest that the stock options are marital property, but maintains that the trial court failed to consider several factors affecting the valuation of the options, including tax conse-quences. Plaintiff also argues that the trial court

failed to make findings of fact indicating how it arrived at the value of the options. Defendant, on the other hand, argues that the evidence in the record supports the trial court's valuation of the stock options. She maintains that taxes are too speculative for the court to deduct an amount for them from the value of the options. Defendant also argues that the trial court made adequate findings of fact regarding the value of the options.

In *Thames v Thames,* 191 Mich App 299, 301-302; 477 NW2d 496 (1991), this Court stated:

> This Court is required to accept the factual findings of a trial court in a divorce case unless those findings are clearly erroneous. *Beason v Beason,* 435 Mich 791, 805; 460 NW2d 207 (1990). A finding is clearly erroneous if the reviewing court, on all the evidence, is left with a definite and firm conviction that a mistake has been committed. *Id.* Under this standard, the reviewing court cannot reverse if the trial court's view of the evidence is plausible. *Id.* Deference is given to the special opportunity of the trial court to judge the credibility of witnesses. MCR 2.613(C).

The trial court found that plaintiff owned options to purchase 3,660 shares of stock in his employer's company. The trial court specifically determined that these options were worth $102,445, which was the amount defendant testified to and alleged in her trial brief. We conclude that the trial court complied with the requirement of MCR 2.517(A)(1) to find the facts specially. *Birkenshaw v Detroit,* 110 Mich App 500, 509; 313 NW2d 334 (1981); *Kirkendall v Heckinger,* 105 Mich App 621, 628; 307 NW2d 699 (1981).

Although the trial court complied with MCR 2.517(A)(1), we believe the trial court's view of the evidence with regard to the valuation of the op-

tions is not plausible. The trial court's $102,445 valuation figure is based upon the testimony of defendant and her trial brief that lists this amount. However, defendant failed to fully explain how this number was calculated. Meanwhile, plaintiff presented expert testimony regarding a method to calculate the value of the options that resulted in a valuation of $50,861. During the January trial proceedings, plaintiff relied on his expert's formula and testified that the options were then worth $66,000. Consequently, we remand the case to the trial court for revaluation of plaintiff's stock options in light of this opinion. See *Postema v Postema,* 189 Mich App 89, 102; 471 NW2d 912 (1991).

We next consider the method of valuation of stock options in divorce proceedings, which is an issue of first impression in this Court. Other jurisdictions have examined the issue regarding how to calculate the value of stock options, a formidable task given the numerous possible contingencies and restrictions involving stock options. In this case, problems inherent in calculating the value of the options are alleviated by the fact that plaintiff asked the trial court, when valuating the options, to assume that all the options would be exercised. The judgment of divorce must contain an order to exercise the matured options in order to avoid an inequitable property distribution caused by fluctuating market prices.

In *Burkey v Burkey (On Rehearing),* 189 Mich App 72; 471 NW2d 631 (1991), this Court calculated the present value of an employee stock ownership plan (ESOP) by determining the number of shares in the employee's account and multiplying that figure by the value of those shares. *Id.,* p 76. An ESOP is a plan whereby the employee or employer, or both, place specified amounts of money

into the plan, with a trustee crediting the contributions, and the benefit paid out upon retirement is directly related to the value of the account. *Id.,* pp 75-76.

Stock options, on the other hand, are a type of employee benefit where the employer offers to the employee the opportunity to purchase stock in the employer's company at any given time for a certain price. Options are characterized as matured on the date the options may be exercised by the employee. Upon purchase, the stock is owned by the employee and is usually tradable on the open market. The options, however, might be subject to various conditions. For example, in this case, plaintiff's options were neither transferable nor assignable. The right to exercise the options expires on certain dates. The options were contingent upon plaintiff's continued employment with his employer, and any options that are not matured at the time plaintiff ends his employment are forfeited.

Although stock options are fundamentally different from ESOP's, the value of options in this case is determinable in a similar manner. The present value of stock options is calculated by subtracting the option cost from the market price of the stock. The actual date on which to determine the market price for valuation purposes is within the discretion of the trial court. *Id.,* pp 76-77. If the market price of the stock is lower than the option cost, then the options are worthless and need not be allocated between the parties.[1] In this case, the options had different costs depending on when they were offered by plaintiff's employer.

---

[1] A situation might arise where the market price of the stock is lower than the option cost at the time of the divorce proceedings, and then is higher than the option cost after the divorce judgment. We need not address at this time any possible remedy in that hypothetical situation.

We agree with plaintiff that the trial court erred in valuating the options without taking into consideration the tax consequences. See *Lesko v Lesko,* 184 Mich App 395, 403; 457 NW2d 695 (1990); *Wiand v Wiand,* 178 Mich App 137, 151; 443 NW2d 464 (1989). Plaintiff's expert testified that even though the options are not subject to immediate taxation, they will be taxed when they are exercised because they are a form of employment compensation. Indeed, the record indicates that options exercised by plaintiff in 1988 were taxed. Thus, the trial court clearly erred when it valued the options without considering the tax consequences. *Thames, supra.* We direct the trial court to adjust the valuation of the options accordingly. *Lesko, supra.*

The trial court also clearly erred in finding the same present value for all plaintiff's options on 3,660 shares of stock. At the time of trial, plaintiff owned options on 3,660 shares of stock, but the options with regard to two hundred shares were not yet matured. It was inappropriate to place the same present value on the options for the two hundred shares that were not yet matured as on the options that had matured, because of the conditions applicable to the options as listed above. For example, the options on the two hundred shares could be rendered worthless by plaintiff's ending his employment, or if the market price of the stock is less than the option cost when the options mature, As a result, the trial court must divide these options in a manner that protects defendant's equitable share in them.

Finally, plaintiff contends that the trial court clearly erred in valuing the New Jersey home in which he lives. He argues that the property has negative equity because of a downturn in the real estate market.

The trial court valued the property at $40,250, which is the amount defendant claimed was the down payment on the house. Plaintiff purchased the home for $222,500 in 1988. The record indicates that plaintiff made a $22,250 down payment, and the mortgage balance at the time of trial was $199,000. The record also shows that plaintiff exercised some stock options in order to make the down payment,[2] but did not notify defendant about this expenditure of marital assets.

Despite plaintiff's argument, the trial court held that the property had some value. The trial court held that plaintiff's poor business decision to purchase the home should not result in harm to defendant. The court also stated that plaintiff's decision to not notify defendant about his exercise of stock options to pay for the home played a part in its valuation of the home. Under these circumstances, we cannot say that the trial court's valuation of the New Jersey home was clearly erroneous.

Reversed and remanded to the trial court for further proceedings consistent with this opinion.

[2] The proofs show that the $40,250 figure determined by the trial court as the down payment represents the pretax gain plaintiff received when he exercised stock options. Plaintiff then liquidated this stock and used the after-tax dollars for the down payment.