*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ESTATE OF MARGARET GJEBIC.

---

THERESA GJEBIC, Personal Representative of the
ESTATE OF MARGARET GJEBIC,

        Appellee,

v

JOSEPH GJEBIC,

        Appellant.

UNPUBLISHED
March 27, 2025
1:29 PM

No.  368300
Wayne Probate Court
LC No.  2019-851080-DE

---

Before:  FEENEY, P.J., and SWARTZLE and CAMERON, JJ.

PER CURIAM.

Appellant, Joseph Gjebic, appeals the trial court's order holding him in contempt for failing to comply with the trial court's orders. We vacate the portions of the contempt order removing appellant as an interested person and precluding him from receiving any further distributions from the estate, but affirm in all other respects.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case involves the contested distribution of decedent's, Margaret Gjebic's, estate. After Margaret died, a petition to open an estate in probate was filed identifying Margaret's two sons, Zvonimir Gjebic ("John")[1] and appellant as her heirs.[2] The petition named John's wife to be the estate's personal representative. Margaret's will divided her property by granting 2/3 to appellant and 1/3 to John.

---

[1] John died in July 2020.

[2] According to the petition, there was a third son, James, who had predeceased his mother.

After a dispute arose regarding the distribution of the estate, the parties entered into a settlement agreement.[3] The agreement, by its terms, disposes of the entirety of the estate. Its terms include alternatives regarding the market evaluation of the real estate versus actual selling price, minimum guarantees to John, and an option for appellant to retain Margaret's home. Generally, it provides for a 58% distribution to appellant, and a 42% distribution to John, though some provisions provide for guaranteed minimums to John for the real estate. Additionally, it explicitly states that it would distribute property regardless of whether it was an asset of the estate at the time of Margaret's death.[4]

Nearly a year after the petition was filed, the trial court entered three orders. The first order approved the settlement agreement, the second dismissed the petition for probate, and the third enforced the settlement agreement. Eleven months after this, the personal representative filed a petition to reopen the estate because appellant had "failed to comply with the terms of the settlement agreement" and reappointing the personal representative was "necessary to enforce the terms [of the agreement, and] secure and dispose of the assets of the estate." The trial court granted the petition, and directed appellant to turn over proceeds from Margaret's retirement account— about $13,000—within seven days and vacate Margaret's home. It also authorized the personal representative to sell the home and Margaret's real estate in Canada. The trial court entered another order a month later, again ordering appellant to turn over the retirement account proceeds and vacate Margaret's home, and authorizing the personal representative to sell the home and Canadian real estate. The trial court's order also required appellant to provide an accounting of the rental income from the Canadian real estate within 30 days and awarded attorney fees and costs.

After this Court upheld the validity of the settlement agreement in the prior appeal, *In re Estate of Margaret Gjebic*, unpublished per curiam opinion of the Court of Appeals, issued March 30, 2023 (Docket No. 359760), the personal representative petitioned for an ex parte temporary restraining order (TRO) and requested the trial court find appellant in contempt. The petition alleged that appellant had sold a farm in Canada and "absconded with all the proceeds" contrary to the trial court's prior orders. The trial court granted the petition, but held the determination of appellant's contempt in abeyance pending appellant turning over the proceeds from the sale.

In July 2023, the trial court entered an order transforming the earlier TRO into a preliminary injunction and ordered that money held in the trust fund held by appellant's attorney be turned over to the estate. It also ordered appellant to turn over $153,000 to the estate, direct the Royal Bank of Canada to transfer any money appellant held to the estate's attorneys, and to direct the Canadian attorney to wire any sums remaining from an escrow account to the estate's attorney.

---

[3] The agreement's terms and validity are not directly before this Court in this appeal. The agreement was challenged in a prior appeal to this Court. In that prior appeal, we held that the settlement agreement was valid and that the trial court properly acted in its enforcement. *In re Estate of Margaret Gjebic*, unpublished per curiam opinion of the Court of Appeals, issued March 30, 2023 (Docket No. 359760), p 4.

[4] Margaret quitclaimed all of her real estate to Joseph after the will had been signed. See *Estate of Gjebic*, unpub op at 1.

The trial court further required appellant to provide an accounting of the farm's income and to comply with a subpoena duces tecum.

The trial court next entered an order holding appellant in contempt for failing to comply with its prior orders. Appellant did not appeal this order. The trial court then entered a second order of contempt, which it subsequently corrected, again finding appellant in contempt for failing to comply with the trial court's prior orders, and ordering the following:

IT IS HEREBY ORDERED that the *Petition* is GRANTED.

IT IS FURTHER ORDERED that this Court's September 20, 2023 Second Order of Contempt is set aside;

IT IS FURTHER ORDERED that Joseph Gjebic is in contempt of this Court's Prior Court Orders;

IT IS FURTHER ORDERED that Joseph Gjebic shall receive no further distributions from the Estate for any distributive share that he may have been previously entitled [to] under the Court's Prior Court Orders;

IT IS FURTHER ORDERED that the Estate is entitled to:

A. 100% of all proceeds from the sale of the deceased['s] property located at 69 Vernier Rd., Grosse Pointe Shores;

B. 100% of the $200,317.59 previously turned over to the Estate's attorneys by Joe Gjebic and his prior counsel related to the proceeds of the sale from Margaret Gjebic's farm property in Canada (26321 Crinan Line, West Elgin, Ontario NOL 2PO);

C. 100% of the $65,724.29 (U.S. Dollars) to [be] wired by Mr. Gjebic's Canadian counsel, Michael Laba (relating to the remaining escrowed proceeds held by Michael Laba for capital gains taxes related to the sale of the decedent's Canadian farm) to the Estate's attorneys;

D. 100% of the Strategic Asset Management [retirement] Funds ($12,272.70) previously ordered by the Court on July 15, 2020 and October 15, 2021[;]

E. $7,500.00 from Joseph Gjebic pursuant to this Court's [First] Order of Contempt dated August 1, 2023[;]

F. The sum of $453.50 from Joseph Gjebic pursuant to the Court of Appeals' Chief Clerk's May 16, 2023 notice of taxation of costs[.]

IT IS FURTHER ORDERED that Joseph Gjebic shall no longer be considered an Interested Person in this proceeding;

-3-

IT IS FURTHER ORDERED that with respect to the $153,000.00 taken by Joseph Gjebic contrary to the Court's May 4, 2023 TRO, which Joseph Gjebic claims is the subject of an FBI investigation for return of those funds, the Court shall enter a separate money judgment in favor of the Estate and against Joseph Gjebic in the amount of $153,000.00. Nothing herein shall preclude the Estate from executing on such money judgment as provided by applicable Michigan laws, statutes, and court rules.

IT IS FURTHER ORDERED that the Court previously awarded costs and attorney fees to the Estate from Joseph Gjebic for all actions the Estate was forced to take to enforce this Court's Prior Court Orders, in an amount to be determined. The Estate shall submit its affidavit of costs and attorney fees and supporting documentation within 30 days of entry of this order and the Court will set a hearing date to determine the amount of costs and attorney fees. Joseph Gjebic may file a response to the Affidavit of Costs and Fees no later than 10 days prior to the hearing on that matter.

IT IS FURTHER ORDERED that except as otherwise specifically set forth herein, all provisions of all this Court's Prior Court Orders remain in full force and effect.

Appellant now appeals, challenging the corrected second contempt order. For the reasons set forth below, we vacate the portions of the trial court's corrected contempt order imposing criminal sanctions, but affirm the rest.

## II. STANDARDS OF REVIEW

"We review a trial court's issuance of a contempt order for an abuse of discretion." *Porter v Porter*, 285 Mich App 450, 454; 776 NW2d 377 (2009). "Moreover, a trial court's factual findings are reviewed for clear error and questions of law are reviewed de novo." *Id*. at 454-455. "The abuse of discretion standard recognizes that there will be circumstances where there is no single correct outcome and which require us to defer to the trial court's judgment; reversal is warranted only when the trial court's decision is outside the range of principled outcomes." *Id*. at 455.

## III. ANALYSIS

As a preliminary matter, the parties dispute whether the trial court held appellant in civil or criminal contempt. The trial court did not specify whether its contempt orders were civil or criminal in nature. "Criminal contempt differs from civil contempt in that the sanctions are punitive rather than remedial." *DeGeorge v Warheit*, 276 Mich App 587, 591; 741 NW2d 384 (2007). "Although civil sanctions may also have a punitive effect, the sanctions are primarily coercive to compel the contemnor to comply with the order." *Id*. at 592. "Civil contempt proceedings seek compliance through the imposition of sanctions of indefinite duration, terminable upon the contemnor's compliance or inability to comply." *Id*. "By contrast, the purpose of criminal sanctions is to punish past disobedient conduct by imposing an unconditional and definite sentence." *Id*.

The trial court's first contempt order was civil in nature. It was attempting to compel appellant to comply with the trial court's prior orders. See *id*. The corrected second order of contempt, on the other hand, imposed both civil and criminal contempt sanctions. Most of the provisions in the corrected second contempt order imposed damages for his breach of the settlement agreement by ordering appellant to pay the estate that to which it was entitled under the agreement. But two provisions—those which effectively divested appellant of his interest in the estate—were punitive in nature, and thus constitute criminal contempt.

Regarding the civil contempt provisions, appellant argues that the trial court abused its discretion by imposing monetary sanctions more than $7,500. See MCL 600.1715 ("Except as otherwise provided by law, punishment for contempt may be a fine of not more than $7,500.00 . . . ."). But appellant's argument mischaracterizes the trial court's order as being purely a contempt fine. Subparagraphs A-D of the corrected second contempt order concern money to which the Estate was entitled under the settlement agreement. Similarly, Subparagraph F is not a contempt fine because it concerns the taxable costs this Court awarded the estate in the prior appeal. *In re Gjebic*, unpub op at 4. Indeed, the only paragraph imposing a contempt fine is subparagraph E, which awards $7,500. Accordingly, the trial court did not exceed its fine-imposing authority under MCL 600.1715.

Appellant also argues that the trial court's order was "clearly punitive and prohibited as a matter of law[,]" but concedes that a trial court has the authority to order compensatory damages to a party injured by contempt, citing *Birkenshaw v Detroit*, 110 Mich App 500, 511; 313 NW2d 334 (1981). Appellant supports his argument by citing to the trial court's comments at a hearing that it was granting appellee's contempt motion on the basis of appellant's noncompliance with the trial court's prior orders and its reference to appellant's prior appeal. We disagree with appellant's argument that the trial court's reference to appellant's noncompliance with its prior orders indicates that it intended to impose punitive damages. At most, this reference indicates that the trial court's findings and determination that appellant was in contempt of court. As for the alleged specific reference to appellant's prior appeal, appellant contends this "obviously raise[s] concerns [that] the trial court held bias against" him, but we disagree. The statement appellant quotes from the trial court is:

> The Court is granting the motion based on its separate findings and adoption of the recitations that's [sic] been set on this record, as the Court's finding of the non-compliance of the numerous Court's order[s] going back to the initial proceeding that was taken up under appeal and back, before this Court.

This passing reference to appellant's prior appeal does not indicate that the trial court harbored any bias against appellant.

Unlike these civil-contempt provisions, the contempt sanctions that appellant is to receive no further distributions from the estate and declaring that appellant was no longer an interested party in the estate were punitive and thus constitute criminal contempt. Both of these provisions divested appellant of his interest in the estate.

The Estates and Protected Individuals Code (EPIC), MCL 700.1101, *et seq*., defines the various "interested persons" who have a stake in an estate. MCL 700.1105(c). A decedent's heirs

are considered "interested persons" under the statute. *Id.* Here, appellant was an heir to the estate under EPIC and was thus an interested person in the estate. *Id.*; MCL 700.2103. Therefore, the trial court's contempt order effectively divested appellant of his statutorily-defined interest. We recognize that, under limited circumstances, an interested person can be divested of their interest in an estate,[5] but appellee has presented no authority supporting the conclusion that a statutory right can be divested by way of a contempt order.

But even if a contempt order could divest all interest in an estate, such a punitive order can only be viewed as a criminal sanction. *DeGeorge*, 276 Mich App at 591-592. Criminal sanctions, by their nature, carry with them specific due-process safeguards:

> When a contempt proceeding is criminal, it requires some, but not all, of the due process safeguards of an ordinary criminal trial. A defendant charged with contempt is entitled to be informed of the nature of the charge against him or her and to be given adequate opportunity to prepare a defense and to secure the assistance of counsel. A defendant charged with contempt is entitled to be informed not only whether the contempt proceedings are civil or criminal, but also the specific offenses with which he or she is charged. [*In re Contempt of Henry*, 282 Mich App 656, 672; 765 NW2d 44 (2009) (quotation marks and citations omitted).]

Further, appellant's contempt was indirect—that is, it was committed outside "the immediate view and presence of the court[.]" *In re Contempt of Murphy*, 345 Mich App 500, 503-504; 7 NW3d 72 (2023), quoting MCL 600.1711(2). In cases of indirect contempt, the contemnor is entitled to a hearing before the trial court may impose any punishment. *In re Murphy*, 345 Mich App at 503-504; MCL 600.1711(2). Thus, appellant was entitled to a hearing before the trial court could impose the interest-divesting sanctions.

Appellant was not afforded these rights. Only a defendant may waive his or her due-process rights. Const 1963, art 1, § 17 ("No person shall be compelled in any criminal case to . . . be deprived of life, liberty or property, without due process of law."); see also, e.g., *People v Montgomery*, 64 Mich App 101, 103; 235 NW2d 75 (1975) ("The right to be present at one's felony trial is one of those rights that only the defendant can waive[.]"). Appellant did not waive his due-process rights. Therefore, the trial court failed to provide appellant his constitutionally-required safeguards before it imposed criminal sanctions.

Finally, appellant claims the proceedings were procedurally defective. He argues that the trial court "improperly castigated [appellant] for not filing his discovery response to the court, despite the general rule not providing for filing of discovery responses." The hearing on the second contempt motion included a discussion of whether appellant had complied with discovery requests, and, more specifically, whether he had complied with the prior order specifically directing him to provide certain documentations. At the hearing, the trial court addressed appellant's failure to file the discovery responses, noting that if appellant believed he had complied with the discovery

---

[5] For example, disinheritance can happen through a validly executed will, MCL 700.2101(2), voluntary disclaimer, MCL 700.2902(1), or where the heir feloniously and intentionally takes the decedent's life, MCL 700.2803(1).

request and that the estate's claim he had not was false, he could prove his compliance by supplying copies to the trial court. Specifically, the trial court stated:

> Excuse me. But, my retort to that is, as I stated, if you're telling me that [the estate's attorney has] been disingenuous in responding to document production, then the burden shifts—the responsibility shifts on your client's part to produce, by way of separate petition or response, that 'Judge, here's the original request, here's the document. Here's the separate request. Here's the document.' And ultimately, if [the estate's attorney] contests your representation, if that's what you're going to rely on, then it's up for the Court to determine if, in fact, that which you say has been produced in response to their request, had in fact, been produced and therefore strike the request for the contempt.

> But, I don't have any of that, do I?

Contrary to appellant's assertion, this comment does not constitute castigation. It is merely a pointed observation that appellant had not provided any evidence to counter the estate's claim of noncompliance.[6]

In sum, the trial court's corrected second contempt order is largely a determination of what the estate was already entitled to under the settlement agreement and a grant of compensatory damages in accordance with that entitlement. But the provisions of the order divesting appellant of his interest in the estate was a punitive sanction that triggered appellant's due-process rights. The trial court's failure to provide appellant with due-process safeguards in this respect was in error. Therefore, we vacate the portions of the contempt order removing appellant as an interested person and precluding him from receiving any further distributions from the estate, but affirm it in all other respects.

/s/ Kathleen A. Feeney
/s/ Brock A. Swartzle
/s/ Thomas C. Cameron

---

[6] Appellant also argues the trial court failed to take sworn testimony regarding the claim that appellant had not complied with document requests. Because we hold the trial court failed to provide appellant with the appropriate due-process safeguards with respect to the corrected second order of contempt's criminal provisions, we need not address this argument. As for the civil-contempt provisions, "[a]s opposed to a criminal contempt proceeding, in which some, but not all, of the due-process safeguards of an ordinary criminal trial are used, a civil contempt proceeding only requires 'rudimentary' due process, i.e., 'notice and an opportunity to present a defense[.]' " *In re Moroun*, 295 Mich App 312, 331; 814 NW2d 319 (2012) (citations omitted). Appellant was entitled to the opportunity to present a defense, which he did at the hearing on the contempt motion through his attorney. He was not entitled to provide "sworn testimony" on the matter, because "civil contempt requires fewer protections than criminal contempt." *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 669-670; 997 NW2d 511 (2022).